304 So.2d 517 (1974)
In re ESTATE OF John M.L. RUTHERFURD, Deceased.
No. 73-72.
District Court of Appeal of Florida, Fourth District.
December 13, 1974.
Melvyn B. Frumkes, of Abbott, Frumkes & Alhadeff, Miami Beach, for executrix and sole beneficiary.
Bruce W. Parrish, Jr., of O'Connell & Cooper, West Palm Beach, as appellee.
FARRINGTON, OTIS, Associate Judge.
The Executrix of the Estate of M.L. Rutherfurd, deceased, appeals an award by *518 the probate judge of an attorney's fee of $75,500 to the attorney for the executrix, which was allocated as $49,500 for ordinary services and $26,000 for extraordinary services. The executrix is the widow of the deceased and the sole beneficiary of the estate.
Appellant-executrix contends the probate judge erred in denying her request for a continuance of the hearing on the petition for allowance of attorney's fees until she could obtain local counsel to represent her at the hearing and that the fee awarded was excessive. We find that refusal of the probate judge to grant the requested continuance was an abuse of discretion under the peculiar circumstances of this case, and reverse. To clarify these peculiar circumstances and the issues involved at the hearing on the petition for attorney's fees, we will briefly review the probate proceedings.
The law firm of O'Connell & Cooper, P.A., commenced its legal services for appellant on April 15, 1971, by filing in the County Judge's Court of Palm Beach County, Florida, the petition of Katherine C. Rutherfurd to probate the will of John M.L. Rutherfurd, deceased. Phillip D. O'Connell, Sr., of that law firm assumed major responsibility for performing the legal services in the administration proceeding.
Numerous problems developed during the probate proceeding. Katherine C. Rutherfurd largely ignored her responsibility as executrix of the estate. Mr. O'Connell called and wrote letters explaining what was necessary to be done, but generally could not obtain her cooperation. Against the advice of her attorney, she attempted to give, and in fact effected delivery of, a valuable yacht, property of the estate which had never been distributed to her individually, to Florida Atlantic University. Litigation over the yacht resulted, which was settled by an agreed sale of the yacht with recovery for the estate of $95,426 as its share of the division of the proceeds. She never signed the inventory, although an inventory was filed which was signed only by Mr. O'Connell as her attorney.
A son of the deceased filed a petition to revoke the order of probate and remove Mrs. Rutherfurd as executrix, alleging defective execution or attestation of will, undue influence practiced by Mrs. Rutherford on the decedent, and incompetence of the decedent at the time of execution of the will; also, this son filed a petition to remove Mrs. Rutherfurd as executrix, alleging insanity, habitual drunkenness, failure to file an inventory, wasting and maladministration. At the suggestion of Mr. O'Connell, Mrs. Rutherfurd employed a personal attorney to protect her individual interests in these proceedings, although Mr. O'Connell actively participated on behalf of the estate. The petitions were disposed of by settlement after a four-day trial on the petition to revoke the order of probate was aborted by declaration of a mistrial, when the probate judge recused himself on motion made by Mr. O'Connell on behalf of the estate and the personal attorney on behalf of Mrs. Rutherfurd individually. The settlement provided for payment by Mrs. Rutherfurd personally of the sum of $110,000 to be paid to the children of the decedent by former marriage, and for dismissal of the petitions to revoke the order of probate and to remove the executrix. Mr. O'Connell arranged for distribution of monies from the estate to Mrs. Rutherfurd for her use in effecting this settlement.
Shortly after the probate was commenced, Mrs. Rutherfurd left Florida. Thereafter, Mr. O'Connell was unable to maintain direct communication with her; he was mainly required to contact her through her New York attorney, Mr. San Filippo, who apparently was fully authorized to act on behalf of Mrs. Rutherfurd in all matters involving the estate.
On October 26, 1972, O'Connell & Cooper, P.A., filed its petition for attorney's fees with certificate of service by mail on *519 the executrix, Katherine C. Rutherfurd, and her New York attorney, Augustin J. San Filippo. On October 31, 1972, O'Connell & Cooper, P.A., filed a document entitled, "List of Services Rendered for the Estate" over the signature of Phillip D. O'Connell, Sr., detailing the services rendered the estate. The final paragraph of this document which indicates the amount claimed reads as follows:
"The gross value of the estate for income tax purposes was $2,390,848.22. Two houses passed by operation of law, and these amounted to $328,137.19, leaving the amount of $2,062,711.03 as the amount to be used in determining the attorney's fees. In addition, I have calculated the minimum income of the estate during its administration to be $80,000, making a total of $2,142,711.03. Based upon the minimum fee schedule of the Palm Beach County Bar Association, the minimum attorneys' fees would be $49,540.00, plus a valuation for the additional extra-ordinary services."
On November 13, 1972, O'Connell & Cooper, P.A., served Augustin J. San Filippo and Mrs. Katherine Rutherfurd by mail with notice of a hearing on the petition for allowance of attorney's fees scheduled for December 4, 1972.
The hearing was held on December 15, 1972, after being rescheduled by Mr. O'Connell at the request of Mr. San Filippo. When the hearing commenced, Mr. San Filippo appeared for the executrix and orally moved for a continuance.
As grounds for his request, Mr. San Filippo pleaded that he had been trying ever since the petition for attorneys' fees was initiated to obtain local counsel without success; that he had contacted over 15 lawyers in Palm Beach County and each one turned him down primarily because they had such a high regard for Mr. O'Connell, or were friends of Mr. O'Connell and just didn't want to appear against him. Mr. San Filippo stated that he also had high personal and professional regard for Mr. O'Connell but felt that with adequate representation and preparation he could establish on behalf of the executrix that application of the minimum fee schedule of the Palm Beach County Bar Association to the assets of the estate as a basis for determining the fee for ordinary services of the attorney for the executrix would be unfair and inequitable because "the major part of the work was done by me and my associates and law partners in New York."
Mr. O'Connell opposed the request for a continuance, stating that he had tried to get the matter set in October but had acceded to Mr. San Filippo's request for more time. Mr. O'Connell stated to the court:
"... I waited through November and didn't get anything done and finally in November we set it down for December 4th. Then Mr. San Filippo called and requested, wrote me a letter and I called back. I postponed it and he said give me another week or ten days. We made it for the 15th rather than the 4th and gave him 11 additional days that he requested. This is nothing new, Your Honor, we have had almost six months of this trial to get before Your Honor."
The following colloquy ensued between the judge and Mr. San Filippo:
"THE COURT: I think that the only thing we can do at this particular time is, I think under the rules we can under certain circumstances permit you to question even though I think you should probably have local counsel. I will allow you to cross-examine the witnesses or question anyone that is going to testify here today and I think that is about all we can do in your capacity as an attorney.[1]

*520 "MR. SAN FILIPPO: If Your Honor pleases, I am not prepared to cross-examine any witnesses. I have assumed all along I would have counsel and that my local counsel would prepare this case and ascertain who the witnesses are and maybe take depositions. I am totally unprepared and I didn't except I would be trying this or defending my client in this proceeding on this date.
"THE COURT: Well, this is the first time I have ever heard anyone say I couldn't find a lawyer to represent them.
"MR. SAN FILIPPO: I am afraid that Your Honor has to accept my word for that. In that regard I submit a list of lawyers I contacted which includes also who recommended them."
The probate judge denied the application for a continuance and the hearing proceeded. Three local attorneys testified as expert witnesses on behalf of appellee. They each testified that the ordinary services of the attorneys for the executrix should be valued by application of the Palm Beach County Bar Association minimum fee schedule; these attorneys valued the extraordinary services at amounts ranging from $34,000 to $50,000. The probate judge allowed Mr. San Filippo to cross-examine the witnesses, which he attempted to do although continuing to protest his unpreparedness. His efforts to cross-examine Mr. O'Connell and the three attorneys appearing as expert witnesses for appellee were unproductive. No witnesses were presented on behalf of the executrix.
If this had been an ordinary adversary situation with each party represented by counsel of record, the probate judge would have been amply justified in denying the request for a continuance. No pleadings had been filed in opposition to the petition for attorney's fees. Except in unusual circumstances, an application for a continuance should be served prior to the scheduled time of trial, should be in writing, and should be supported by affidavit as to the factual basis for the request. In most cases a trial judge should insist on compliance with such procedural requirements so as to thwart frivolous efforts for delay and to expedite resolution of the issues in dispute.
However, in special circumstances, special concessions should be made. When it appears that rigid enforcement of procedural requirements would defeat the great object for which they were established, the trial judge should relax them, if it can be done without injustice to any of the parties. Ford v. Ford, 150 Fla. 717, 8 So.2d 495 (1942); Courtney v. Central Trust Co., 112 Fla. 298, 150 So. 276 (1933).
Where, in the course of a probate proceeding, a personal representative's attorney becomes his adversary by reason of the personal representative's opposition to the amount of compensation claimed by the attorney and the submission of the issue to the court for resolution, the personal representative should be allowed adequate time to obtain counsel and for counsel to prepare for defense of the claim. If requested, reasonable time for discovery should be allowed. Although by reason of the provisions of the Florida Probate Law[2] the claim is tried before the probate judge as incidental to the probate proceedings, the determination of a disputed fee claim is analogous to a suit by the attorney against the personal representative for the amount of fee claimed.
In the case sub judice, the claim of the attorney was for a substantial amount. The personal representative and the New York attorney assisting her were strangers in the County Judge's Court of Palm Beach *521 County. Appellant was faced with a formidable task in opposing the fee claim of a popular local attorney of outstanding reputation in the community and bar, and in questioning the propriety of considering the minimum fee schedule of the Palm Beach Bar Association as conclusive of the reasonableness of an attorney's fee for the probate of an estate in Palm Beach County.
The motion for attorney's fees had been filed approximiately seven weeks and the notice of hearing had been served on appellant approximately one month prior to the date of hearing. Despite considerable effort, appellant had been unable to obtain local counsel, which is not surprising since her cause was not one likely to generate great enthusiasm among Palm Beach County attorneys.
Although Mr. O'Connell had arranged a continuance of the hearing at the request of appellant from the originally noticed date of December 4, 1972 to the hearing of December 15, 1972, there had been no prior application by appellant to the probate court for a continuance. It does not appear that the granting of the requested continuance would have caused any injury or great inconvenience to Mr. O'Connell or his expert witnesses, since all were local attorneys.
Under the peculiar circumstances of this case, we find that it was an abuse of discretion for the trial judge to refuse to grant appellant's request to continue the hearing. The probate judge should have continued the hearing on attorney's fees for a reasonably limited time sufficient to enable appellant to employ an attorney familiar with Florida probate practice and authorized to practice in Florida courts to assist her in the preparation and presentation of the defense she seeks to assert against appellee's claim for attorney's fees. Since she was well able to pay for an attorney's services, it is likely she would have been able to employ a qualified member of The Florida Bar to represent her within a reasonable time. Appellant has been able to obtain attorneys authorized to practice in Florida (although not members of the Palm Beach County Bar) to present this appeal.
By this opinion we do not intend to indicate any opinion as to the reasonableness of the fee awarded or as to the merits of the defense sought to be asserted against the amount of fee claimed.
Reversed and remanded for re-trial of appellee's claim for attorney's fees.
WALDEN and DOWNEY, JJ., concur.
NOTES
[1] It was unclear from this statement by the judge whether Mr. San Filippo would be permitted to participate fully as attorney for the attorney for the executrix at this hearing or would be limited to cross-examination of appellee's witnesses. His acting as attorney at the hearing was prohibited by paragraph 2 of article II of the Integration Rule of The Florida Bar since there was no association of an active member of The Florida Bar appearing with him at the hearing.
[2] Section 734.01(2), Florida Statutes.