746 So.2d 1109 (1999)
SPRUCE CREEK DEVELOPMENT CO., OF OCALA, INC., Appellant,
v.
Wilma DREW and William Drew, her husband, Appellees.
No. 98-2004.
District Court of Appeal of Florida, Fifth District.
September 24, 1999.
Rehearing Denied December 3, 1999.
*1111 Robert E. Bonner and Ernest J. Myers, of Meier, Lengauer, Bonner, Muszynski & Doyle, P.A., Orlando, for appellant.
Steven L. Brannock, Chris N. Kolos and Thomas M. Burke, of Holland & Knight Maguire, Voorhis & Wells, Orlando, for appellees.
GRIFFIN, J.
Spruce Creek Development Company of Ocala, Inc. ["Spruce Creek"], appeals a final judgment in favor of Wilma and William Drew ["the Drews"], arising out of a head-on motor vehicle accident killing one driver and permanently maiming the other, Mrs. Drew. The Drews contend that the accident was caused by improper signage at the entrance to appellant's retirement community in Marion County. Because we conclude that the jury was erroneously instructed, we reverse.
Six years before the accident, on March 29, 1989, through its roadway engineer Joseph Martone, P.E., Spruce Creek applied for and was granted a "Single Family Residential III Connection Permit" from the Florida Department of Transportation ["FDOT"], to construct an entrance and exit to its retirement development. Specifically, Spruce Creek sought to construct "one two way driveway, and 82' cross-over and left and right turn lanes" connecting the access road, S.E. 176th Street to U.S. 441, a divided four lane highway. It is undisputed that the access road did not extend beyond U.S. 441 and that the connection would result in a "T" intersection.
The application contained several provisions, including:
The connection(s) will be constructed in accordance with regulations adopted by the Department of Transportation and covered in its "Policy and Guidelines for Vehicular Connections to Roads on the State Highway System."
The application also contained special provisions including:
5. The applicant shall construct and maintain any and all traffic control devices required or called for by application of the U.S. Department of Transportation's Federal Highway Administration Manual on Uniform Traffic Control Devices for Streets and Highways.
At the time of the permit, the FDOT's "Policy and Guidelines for Vehicular Connections to Roads on the State Highway System (1985)" provided at page 44 that:
All traffic control devices shall be installed in accordance with the Manual on Uniform Traffic Control Devices (MUTCD) and the current Department standards and specifications. (Emphasis original).
Section 2B-29 of the U.S. Department of Transportation's Federal Highway Administration Manual on Uniform Traffic Control Devices for Streets and Highways ["MUTCD"], entitled "One Way Sign," provides in pertinent part:
One Way signs shall be placed on the near right-hand and the far-left hand corners of the intersection at non-signaled intersections so as to face traffic entering or crossing the one-way street (figure 2-3), except that intersections of divided highways with median widths of 30 feet or more[1] may be signed as in section 2A-31 ... A One Way sign should always be used, where applicable, and may be supplemented by a Turn Prohibited Sign (sec.2B-15).
One Way signs are not ordinarily needed on the one-way roadways of divided highways, where the design of interchanges indicates the direction of traffic on the separate roadways.
Section 2A-31 of the MUTCD, entitled "Wrong-Way Traffic Control," provides in pertinent part:
Efforts should be made to identify and make practical corrections at grade intersections on divided highways where *1112 wrong-way usage is being experienced or where a wide median, a rural unlighted environment or other contributing factors indicate the likelihood of wrong-way movements.
Where roadways are separated by median widths of 30 feet or more, the intersections with the crossroad shall be signed as two separate intersections and ONE WAY signs (section 2B-29) should be visible to each crossroad approach on the near right-hand and far left-hand corners of each intersection with the directional roadways as shown in Figure 2-3. However, when an engineering study has demonstrated that placement of ONE WAY signs in the median area may create confusion, the near right-hand signs in the median may be omitted and ONE WAY signs placed in the far right quadrant of the intersection. Figure 2-3a shows this alternate scheme with one pair of ONE WAY signs in the median replaced by YIELD signs. Turn Prohibition, DO NOT ENTER and WRONG WAY signs may be used to supplement ONE WAY sign layouts in Figures 2-3, 2-3a,2-4.
* * * * * *
If used, DO NOT ENTER and WRONG WAY signs should be placed on a divided highway at a location to be directly in view of a driver making a wrong-way entry from the crossroad. Additional signs may be placed where the median width is 30 feet or more ...
The FDOT approved Spruce Creek's permit on May 12, 1989, and construction began. Spruce Creek did not submit a traffic control device plan or drawing with its application. During construction, FDOT inspected the connection to determine whether the construction complied with the permit and FDOT did require Spruce Creek to install a stop sign and stop bar at the intersection. One-way signs were not required.
Prior to the construction of the connection, Acting State Traffic Engineer, Jack Brown ["Brown"], had issued an instructional memorandum on October 10, 1988, and a revised memorandum on November 18, 1988, entitled, "One-Way Signs on Divided Highway Intersections," regarding ambiguities in recent revisions of the MUTCD. The stated purpose of the memoranda to district traffic engineers was: "To establish the need for and location of one-way signs ... and other signs and pavement markings for crossroads on divided highways."
Both memoranda contained the identical background section detailing the ambiguity:
The requirements for the placement of signing and pavement markings for intersections on divided highways were revised in the Manual on Uniform Traffic Control Devices (MUTCD) in Revision No. 3 dated 9/84. The guidelines provided in the MUTCD in Section 2A-31 and the Figures 2-3 and 2-3a for Revision No. 3, were somewhat confusing. Section 2A-31 was subsequently revised via the Federal Register (Vol. 53 No. 51) on March 16, 1988 and became effective March 21, 1988. In spite of these revisions, the intent of the Manual is still unclear in part. The standards for signing and marking intersections on divided highways with median widths over 30 feet are shown in Figures 2-3 (page 2A-11) and 2-3a (bottom of page 2A-12). The text on Page 2A-18 explains that Figure 2-3 should be used except "... when an engineering study has demonstrated that placement of ONE WAY signs in the median may create confusion, the near right-hand signs in the median may be omitted and ONE WAY signs placed in the far right quadrant of the intersection. Figure 2-3a shows this alternate scheme with one pair of ONE WAY signs in the median replaced with YIELD signs. TURN PROHIBITION, DO NOT ENTER and WRONG WAY signs may be used to supplement ONE WAY sign layouts in Figures 2-3, 2-3a or 2-4."

*1113 Accordingly, it is not clear as to what pavement markings are required in the median area and what criteria should be used to determine the need for TURN PROHIBITION, DO NOT ENTER, and WRONG WAY signs.
This instructional memorandum is temporarily pending the processing of a procedure on this subject.
Accordingly, Brown outlined guidelines interpreting the MUTCD revisions:
Therefore, in order to provide clear guidelines and ensure uniformity in application statewide, the following criteria have been established ...
The guidelines articulated the new policy for placement of signs on divided highways with medians greater than 30 feet and contained the following comment concerning "T" intersections:
These guidelines (as well as the MUTCD) are only intended for crossroads and not crossovers (including "T" intersection). A crossroad is any roadway, paved or unpaved, which is maintained by a public agency. Driveways and entrances to businesses are not considered crossroads. However, if large malls or office complex type developments exist, it may be necessary to install the signs and markings noted herein. This decision is left to the discretion of the engineer. (Emphasis original).
After construction had been completed on the Spruce Creek connection at issue, Brown, now the State Traffic Operations Engineer, issued another instructional memorandum to district traffic engineers on July 2, 1990, entitled "One-way Signs on Divided Highway Intersections":
To clarify an issue raised over an instructional memorandum on the above subject dated November 18, 1988, the use of one-way signing at T-intersections on divided highways with medians over 30 feet is allowed. One-way signing should also be used for signalized intersections with medians over 30 feet. Typical applications are show in Figures 2-3, 2-3a of the MUTCD, (the yield signs would not be used for signalized intersections).
One-way signing for divided highway intersections was the subject of a procedure initially proposed by this office. However, since the document presented guidelines for signing, it will not appear as a procedure but will be included in the Traffic Engineering Manual, to be published later this year.
On June 15, 1991, the FDOT published the Traffic Engineering Manual referred to in Brown's memorandum. The manual section entitled "Signs and Markings at Nonsignalized Intersections of Divided Highways and Crossroads" contained the following definition:

Crossroad. Any intersecting roadway, paved or unpaved, which is maintained by a public agency. It does not include crossovers or "T" intersections. Driveways and entrances to businesses are not considered crossroads. However, if large malls or office complex developments exist, it may be necessary to install the signs and markings noted herein. This decision should be based upon good engineering judgment and is left to the discretion of the District Traffic Operations Engineer. (Emphasis original).
Thus, at the time of its construction, the subject intersection complied with the FDOT's policy regarding the placement of one-way signs on median crossovers of a divided highway.
Six years after approval of Spruce Creek's connection permit, a fatal collision occurred on September 7, 1995. After exiting the Spruce Creek development for her third time, Myrtis McDonnell turned northbound into the southbound lanes of U.S. 441, and collided head-on with a vehicle driven by Wilma Drew. Myrtis McDonnell perished in the collision. Wilma Drew sustained serious and permanent injuries.
In 1997, Wilma and William Drew, her husband, filed suit against FDOT and Spruce Creek, alleging negligence in the failure to install one-way signs at the *1114 Spruce Creek intersection. The Drews alleged that had FDOT or Spruce Creek installed the appropriate signage, Myrtis McDonnell would not have entered the wrong lane of traffic and her death and Wilma Drew's injuries could have been avoided.
Prior to trial, the lower court conducted a hearing, after which it determined, as a matter of law, that the MUTCD applied to "T" intersections, including the intersection in the instant case. Specifically, the court ruled:
[T]he Court finds, as a matter of law, that the Federal Manual on Uniform Traffic Control Devices ("MUTCD"), Sections 2B-29 and 2A-31, applies to "T" intersections, and that one-way signs were required at the subject intersection.
Based upon this pre-trial ruling, the lower court at trial instructed the jury as follows:
It has been legally determined that the Federal Manual on Uniform Traffic Control Devices ("MUTCD") Sections 2B-29 and 2A-31 applies to "T" intersections, and that one-way signs were required at the subject intersection of S.E. 176th Street and U.S. 27/441. I further instruct you that under the MUTCD the FLORIDA DEPARTMENT OF TRANSPORTATION AND SPRUCE CREEK DEVELOPMENT COMPANY OF OCALA, INC., were each required to install the one-way signs at the subject intersection.
Failure to comply with the MUTCD is evidence of negligence. It is not, however, conclusive evidence of negligence. You may consider DOT's and SPRUCE CREEK's failure to comply with MUTCD, together with the other facts and circumstances, in determining whether DOT or SPRUCE CREEK was negligent.
The jury returned a verdict finding FDOT, Spruce Creek, and Myrtis McDonnell negligent and apportioned 35% fault to Spruce Creek, 35% fault to Myrtis McDonnell, and 30% fault to FDOT. The jury awarded $2,033,000.00 to Wilma Drew and $250,000.00 to William Drew for his loss of consortium.
Spruce Creek argues that the lower court erred by going one step too far: rather than limiting its ruling to a finding that the MUTCD called for one-way signs at "T" intersections, the court also ruled that DOT and Spruce Creek were both required to have placed one-way signs at the intersection in the instant case, regardless of the FDOT's policy interpreting the MUTCD not to require the signs.
At the trial below, both the FDOT and the Drews agreed that the State of Florida "owns" and operates U.S. 441. Section 335.09, Florida Statutes (1989), entitled "Uniform Erection and Maintenance of Traffic Control Devices," provides:
The department shall erect and maintain a uniform system of signs, signals, markings, and other traffic control devices for the regulation, control, guidance, and protection of traffic on the State Highway System. Such system shall conform to the department's uniform system of traffic control devices as adopted pursuant to s. 316.0745.
Section 316.0745, Florida Statutes (1989), entitled "Uniform Signals and Devices," provided in pertinent part:
(1) The Department of Transportation shall adopt a uniform system of traffic control devices for use on the streets and highways of the state. The uniform system shall, insofar as is practicable, conform to the system adopted by the American Association of State Highway Officials and shall be revised from time to time to include changes necessary to conform to a uniform national system or to meet local and state needs. The Department of Transportation may call upon representatives of local authorities to assist in the preparation or revision of the uniform system of traffic control devices.

*1115 (2) The Department of Transportation shall compile and publish a manual of uniform traffic control devices which defines the uniform system adopted pursuant to subsection (1), and shall compile and publish minimum specifications for traffic control signals and devices certified by it as conforming with the uniform system.
* * * * * *
(8) The Department of Transportation is authorized to permit traffic control devices not in conformity with the uniform system upon showing of good cause.
Section 316.0747(1), Florida Statutes (1989), provides:
(1) It is unlawful for any nongovernmental entity to use any traffic control device at any place where the general public is invited, unless such device conforms to the uniform system of traffic control devices adopted by the Department of Transportation pursuant to this chapter.[2]
Based upon the above, we conclude that the authority to adopt and implement a uniform traffic control device system was invested by the Florida legislature in the FDOT.[3]
Pre-trial, the court considered memoranda of law, deposition testimony, and affidavits from four experts, including Spruce Creek's own expert, who testified that the applicable provisions of the MUTCD required placement of one-way signs at an intersection like the one where this accident happened. Given FDOT's authority to determine the uniform system of traffic control devices, however, the correct reading of the MUTCD does not determine the requirement of a one-way sign. This was a matter for FDOT to determine and its determination was that a one-way sign was not required at "T" intersections like the one at Spruce Creek. Even if this were not so, the Drews acknowledge, as they must, that if the MUTCD provision at issue were ambiguous then FDOT's interpretation that no one-way sign was required is entitled to deference. We accept FDOT's position that the MUTCD provision at issue is subject to conflicting interpretations and is therefore ambiguous.
The trial court explained on the record[4] that it did not accord the FDOT's interpretation of the MUTCD resolving perceived ambiguities regarding "T" intersections any deference:
PLAINTIFF'S COUNSEL: Your Honor, I argued that it should be a de novo review that the erroneous standard was not applicable in the context of this case...
* * * * * *
FDOT'S COUNSEL: I'm sorry, your Honor, just for the purposes of the record, so that is, "Without the clearly erroneous standard or any deference to DOT's interpretation." Is that correct, your Honor?
COURT: Yes. Not that it will have any difference. I mean I considered it. *1116 But, as a matter of law, one-way signs are required, okay, under the MUTCD regulations.
As argued by Spruce Creek, by erroneously determining Spruce Creek's negligence prior to trial, and so instructing the jury, the trial court essentially directed a verdict in favor of the plaintiffs and deprived Spruce Creek of a fair trial.
Spruce Creek further contends that the Drews' closing arguments to the jury, based on the trial court's instruction, compounded the error:
PLAINTIFF'S COUNSEL: ... Spruce Creek and DOT say, well, we had a policy. We changed the MUTCD. I don't really think it's necessary for you folks to even think about that or consider that because of instruction number four.
The signs were required to be there. All of this talk about their policy doesn't really amount to very much because after all is said and done they were required to be there. Their policy was wrong ...
Plaintiff's counsel further argued:
PLAINTIFF'S COUNSEL: What came out of the arguments of the defendants I suggest to you who are some very, very fine lawyers making some very, very fine arguments and subtly, ever so subtly but directly it's everybody's fault but there is the DOT, weall we did was issue a permit; the permitee, the applicant, he was required to comply and then of course Mrs. McDonnell, it's all her fault. And then Spruce Creek, oh, it's the DOT's road.
We agree that a new trial is required.
We also agree with Spruce Creek that the trial court, over defense objection, erroneously admitted testimony and evidence of a commercial "T" intersection at Spruce Creek that did have one-way signs. The intersection in question was built after the subject intersection and the MUTCD contains separate provisions for commercial intersections. The Drews contend that this evidence is relevant to show what Spruce Creek should have done and would have done if it had hired a competent engineer to design the intersection involved in the accident. We can find no relevancy to this evidence.
Finally, Spruce Creek contends that the trial court should have granted its motions for directed verdict at the conclusion of the Drews' case-in chief, and at the close of the evidence, claiming the Drews impermissibly pyramided inferences upon inferences to establish proximate cause. Specifically, Spruce Creek contends that because the Drews could not establish the inference that Myrtis McDonnell would have seen a one-way sign had it been there, they were not entitled to argue that she traveled in the wrong lane of traffic due to the lack of one-way signs. We find no error here.
As to the Drews' appeal of the order denying them fees, the issue is moot in light of our reversal of the judgment. Nevertheless, for the guidance of the parties on remand, we conclude the lower court erred as to both issues. The single offer by Mr. and Mrs. Drew to settle for $1 million was not void for having failed to separate the offer for each plaintiff. The lack of apportionment between claimants is a matter of indifference to the defendant. If he accepts, he is entitled to be released by both claimants. Cf. Flight Express, Inc. v. Robinson, 736 So.2d 796 (Fla. 3d DCA 1999). Nor was it void for failure to expressly reference section 768.79, Florida Statutes. This is an insignificant technical violation of the rule. Now that there is only one statute governing offers of judgment, implemented by Rule of Civil Procedure 1.442, the purpose of Rule 1.442(c)(1) is met where either the rule or the statute is referenced.
REVERSED and REMANDED.
W. SHARP, and GOSHORN, JJ., concur.
NOTES
[1] The median in the instant case is greater than thirty feet.
[2] Later revisions to the statute included section 316.0747(3), Florida Statutes (1997).
[3] In Jones v. Mississippi Dep't of Transportation, 744 So.2d 256 (Miss.1999), for example, the Mississippi supreme court, when determining whether signs indicating a "T" intersection were necessary, construed the meaning of a similar statute which read:

Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual specifications.
The court concluded that the language "deem necessary," not unlike the language in section 318.075 "necessary to conform to a uniform system or to meet local and state needs," indicated the responsible entity may make the judgment as to where to place traffic control devices. Id.
[4] The pre-trial conference itself was not recorded. The original trial judge, at the request of counsel, explained his reasoning during the trial.