788 So.2d 262 (2000)
GRIP DEVELOPMENT, INC., Appellant,
v.
COLDWELL BANKER RESIDENTIAL REAL ESTATE, INC., Appellee.
Nos. 4D99-1513, 4D99-3509.
District Court of Appeal of Florida, Fourth District.
September 20, 2000.
*263 Jeffrey J. Pardo, Burlington, Connecticut, for appellant.
Stephen N. Lipton and Edward J. O'Sheehan of Shutts & Bowen LLP, Fort Lauderdale, for appellee.

ON MOTION FOR REHEARING AND CLARIFICATION
POLEN, J.
Coldwell Banker Residential Real Estate, Inc. filed a motion for rehearing, motion for rehearing en banc, and motion to certify conflict. We grant rehearing in part, withdraw our original opinion, and substitute the following. We deny the motions in all other respects.
In case number 4D99-1513, Grip Development, Inc. ("Grip") appeals after the court denied its motion for new trial on damages awarded to its broker, Coldwell Banker Residential Real Estate, Inc. ("Coldwell Banker"). Grip argues that the jury's quantum meruit verdict exceeded the amount claimed under the brokerage contract, and that the Brokerage Relationship Disclosure Act precludes such a recovery as a matter of public policy. In case number 99-3509, Grip argues that the award of attorney's fees to Coldwell Banker should be reversed because Coldwell Banker's proposal for settlement was invalid. On this court's own motion, we consolidated both appeals. We affirm the denial of Grip's motion for new trial without comment but reverse the attorney's fees and costs awarded to Coldwell Banker as a result of its untimely proposal for settlement.
On June 3, 1998, Coldwell Banker sued Grip seeking a broker's commission. It is undisputed that it served its complaint on Grip on June 8, 1998. On Friday, September 4, 1998, 87 days after it served the complaint, it served a proposal for settlement upon Grip. The total amount of proposal was $12,569.96, and provided that Grip would have to file written acceptance within thirty days after service of same if it wanted to accept its terms. Grip did not respond to the proposal.
Coldwell Banker prevailed at trial, and the jury awarded it $18,000. The court then entered final judgment for this amount in Coldwell Banker's favor.
Grip moved for a new trial. While his motion was pending, Coldwell Banker moved for attorney's fees pursuant to section 768.79, Florida Statutes (1997) and *264 Florida Rule of Civil Procedure 1.442. The court denied Grip's motion, but granted Coldwell's motion as to entitlement to fees. Thereafter, the court awarded Coldwell Banker $74,705.00 in fees and $4,639.27 in costs, for a total of $79,344.27. Of the $4,639.27 in costs, the record reflects that $3,463.27 had been awarded to Coldwell Banker as the prevailing party of the underlying action pursuant to section 57.041, Florida Statutes (1997); the remaining costs were awarded as a result of Coldwell Banker's attorney's fee litigation. This appeal followed.
Grip argues that because Coldwell Banker's proposal of judgment was served prematurely, the court should not have awarded it fees under section 768.79 and rule 1.442. It maintains that the time requirements of both these provisions must be strictly construed. Coldwell Banker concedes its proposal was served before the expiration of 90 days, but argues that a distinction should be made between offers served too early and those served too late. It concludes that offers served too early should be considered valid if they otherwise substantially comply with the requirements of section 768.79 and rule 1.442.
Section 768.79 provides in pertinent part as follows:
(1) In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by him ... if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer....
§ 768.79(1), Fla. Stat. (1997)(emphasis supplied). In Schmidt v. Fortner, 629 So.2d 1036 (Fla. 4th DCA 1993), we concluded that in enacting section 768.79, the legislature created a mandatory right to attorney's fees if the statutory prerequisites have been met. In reaching this conclusion, we emphasized that the statute contains the words "shall be entitled...." We held that this language
cannot possibly have any meaning other than to create a right to attorney's fees when the two preceding prerequisites have been fulfilled: i.e., (1) when a party has served a demand or offer for judgment, and (2) that party has recovered a judgment at least 25 percent more or less than the demand or offer. These are the only elements of the statutory entitlement. No other factor is relevant in determining the question of entitlement.
Id. at 1040. We also noted that, under this statute, the legislature gave judges discretion only to determine whether the qualifying offer was made in good faith, and whether the amount of fees awarded was reasonable. Id. at 1041.
Section 768.79 does not specify when such offers may be served. This is so because the timing requirements of the statute are merely procedural in nature. Timmons v. Combs, 608 So.2d 1 (Fla.1992). Under the Florida Constitution, only the supreme court has the prerogative to promulgate rules for the procedural aspects of civil litigation through the Florida Rules of Civil Procedure. Fla. Const. art. V, § 2(a).
As such, the supreme court in Timmons adopted the procedural portion of section 768.79 as a rule of court. This rule Florida Rule of Civil Procedure 1.442 provides, in relevant part,
A proposal to a defendant shall be served no earlier than 90 days after service of process on that defendant; a proposal to a plaintiff shall be served no earlier than 90 days after the action has *265 been commenced. No proposal shall be served later than 45 days before the date set for trial or the first day of the docket on which the case is set for trial, whichever is earlier.
Fla. R. Civ. P. 1.442(b)(emphasis supplied).
To paraphrase from our opinion in Fortner, the words "shall be served" that appear in this rule cannot possibly have any meaning other than setting a mandatory time frame for service of such offers. In fact, we held in our recent case of Schussel v. Ladd Hairdressers, Inc., 736 So.2d 776 (Fla. 4th DCA 1999) that section 768.79 and rule 1.442 are punitive[1] provisions which must be strictly construed. Id. at 778. In that case, Ladd's offer was served on Schussel within 45 days of the first day of the docket on which the case was initially set for trial and, thus, was untimely. Arguably, the fact the offer was untimely did not prejudice Schussel because discovery was complete; there was no date certain for the trial to commence; and trial did not actually take place until over six months later. Nevertheless, we held the offer was still void ab initio. We explained,
Since section 768.79 and Florida Rule of Civil Procedure 1.442 are punitive in nature in that they impose sanctions upon the losing party and are in derogation of the common law, they must be strictly construed. See TGI Friday's, Inc. v. Dvorak, 663 So.2d 606, 614 (Fla. 1995); Loy v. Leone, 546 So.2d 1187, 1189 (Fla. 5th DCA 1989). Nothing in the record reflects that Ladd was prevented from making an offer of judgment much earlier in the case, even prior to the case being set for the docket of August 18, 1997, or from making an offer of judgment after having obtained the continuance. The offer of judgment was untimely and thus unenforceable.
Id.
As Schussel suggests, prejudice or lack thereof should not be a topic for judicial inquiry in determining the applicability of section 768.79 and rule 1.442 (outside the "good faith" concept). Simply put, either the offer (or demand) complies with the rule and statute, or it does not.
Moreover, Schussel supports that under rule 1.442 there is no difference between offers that are served prematurely and those that are served too late. Coldwell Banker, however, would have us believe that such a distinction should be made. At oral argument, it maintained that offerees of premature offers may take advantage of Florida Rule of Civil Procedure 1.090(b), which gives the courts discretion to enlarge the time for acting as specified by the rules when a request is made prior to the expiration of the original time. It argued that as trial approaches, the courts lack the same degree of discretion to enlarge the time to respond to late filed offers.
Coldwell Banker's argument is flawed. Because rule 1.442 mandates that the offers be served no earlier than 90 days after service of process on the defendant, there is simply no time period to enlarge. Neither rule 1.442 nor rule 1.090(b) permits the courts to ignore the 90-day time bar for service of offers. See Fla. R. Civ. P. 1.442(a)(stating rule 1.442 "supersedes all other provisions of the rules and statutes that may be inconsistent with this rule"); Spencer v. Barrow, 752 So.2d 135 (Fla. 2d DCA 2000)("Inadvertence or mistake of counsel or ignorance of the rules *266 does not constitute excusable neglect.") (citations omitted).
In any event, Coldwell Banker never made a motion under rule 1.090(b) for any "enlargement" of time to serve the offer. Thus, if we applied rule 1.090(b) as per its interpretation, we would be reading into the rule a requirement that the recipient of a premature proposal must notify the offeror that it filed the proposal too soon. Nothing in any of the rules or statutes support such a conclusion and, in fact, the cases suggest that the party seeking the attorney's fees has the burden to show compliance with the rules. See Gulliver Academy, Inc. v. Bodek, 694 So.2d 675, 677 (Fla.1997)(holding absent reservation of jurisdiction in final judgment, party seeking attorney's fees under section 768.79(6)(a) must show excusable neglect under rule 1.090(b)(2) to enlarge the time for filing a late motion).
Nevertheless, the dissent, citing Spruce Creek Development Co. v. Drew, 746 So.2d 1109 (Fla. 5th DCA 1999), opines that Coldwell Banker's premature service of the proposal for settlement was an "insignificant technical violation" of the rule. We disagree and find this case inapposite. In Drew, the fifth district held that the plaintiff's offer to settle was not void for purposes of award of attorney's fees for failure to expressly refer to section 768.79 in the offer. However, and as the dissent omits, the plaintiff cited to rule 1.442 instead. The court held, "Now that there is only one statute governing offers of judgment, implemented by Rule of Civil Procedure 1.442, the purpose of Rule 1.442(c)(1) is met where either the rule or the statute is referenced." Id. at 1116. This holding suggests that had the plaintiff failed to cite either the rule or the statute, such failure would not have been an "insignificant technical violation."
The overall problem with the dissent's analysis is that it fails to define when serving a proposal prematurely is too soon. Taking the dissent's reasoning to its logical conclusion would invite the scenario of a plaintiff serving the proposal for settlement along with the initial complaint. Clearly, the dissent would agree that neither the supreme court nor the legislature would have intended such a result. The dissent fails to suggest where, along this "slippery slope," a litigant might find a safe perch. In other words, without precise, strictly enforced time requirements for conveying statutory offers or demands, what is to guide the bench and bar as to what is or is not a valid offer when the time constraints are violated?
By promulgating rule 1.442, the court has established certainty in a fairly uncertain and ever changing area of the law. The onus should not be placed on attorneys to argue the inequities, based on a myriad of factual scenarios, of proposals for settlement that do not follow the time requirements of this rule. There was nothing stopping Coldwell Banker from reserving the proposal once the ninety-day bar expired. See Liguori v. Daly, 756 So.2d 268 (Fla. 4th DCA 2000)(holding that proposal for settlement filed during the final week of the trial docket from which the parties had been excused by court order was valid). In sum, we reverse the award of $74,705.00 in attorney's fees and $1,176.00 in costs.
AFFIRMED in part; REVERSED in part.
HAZOURI, J., concurs.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
Parsing the logic of the majority's decision today, one finds the following syllogism:

*267 Major: Rule 1.442 provides that an offer of settlement from a plaintiff "shall be served no earlier than 90 days after service of process on that defendant," and shall is mandatory;

Minor: Plaintiff's offer in this case was mailed 87 days after service;

Conclusion: Therefore the offer was a nullity.
I am afraid this logic simply does not hold up. Its reasoning elevates literalism over textualism, as though a literal construction is synonymous with plain meaning.[2]
The decision reverses an award of attorney's fees under the offer of judgment statute,[3] based on a provision not found in the statute.[4] The provision merely imposes a condition precedent on offers of judgment from plaintiffs to defendants, delaying them for a suitable period to allow the offeree time after initial process to evaluate the claim and defenses. The case thus involves a claimed violation of this purely procedural provision, yet there is no attempt to examine the facts for possible reconciliation with the essential meaning of this provision or its supposed violation. Instead, the offer is dismissed as a nullity and, at that, long after the offeror could possibly go through a new formalistic compliance with the 90 day period and thereby cure any supposed violation.
To sketch the background, initial process was served on defendant on June 8, 1998. Plaintiff then placed a section 768.79 offer of judgment in the mail to defendant on September 4th. The day of this mailing is 87 days after service of process. In its brief, plaintiff asserts that the earliest day defendant would have seen the offer is September 7th. Conspicuously, defendant's brief does not challenge this assertion that the offer was not delivered until the first business day of the following week.
But one also takes judicial notice of the following calendar facts:
 September 4th was a Friday;
 Monday (September 7th) was Labor Day;
 There is no mail delivery on national holidays.
As it seems obvious to me that the first mail bringing the offer was the day after Labor Day, I take as the established fact that the offer may have been mailed on Friday but it was not actually received until the following Tuesday. Consequently it is highly probable that defendant really received the offer no earlier than September 8th. The day of receipt is 92 days after service of process.[5]
The majority nevertheless concludes that the offer was void because the rule's text, shall be served, "cannot possibly have *268 any meaning other than setting a mandatory time frame for service of such offers." Such a construction of rule 1.442 directly conflicts with the proper interpretation of rule 1.442 given by the supreme court and other district courts of appeal in this state. It amounts to an improper application of the rule.
In Gulliver Academy, Inc. v. Bodek, 694 So.2d 675 (Fla.1997), the court considered the time limit for filing a motion for fees when an offer was not accepted and the trial result was favorable to the offeror. The district court in Gulliver Academy had held the time constraints inflexible and denied fees. Its result conflicted with Gilbert v. K-Mart Corp., 664 So.2d 335 (Fla. 1st DCA 1995), where the court had held that the time limits from the statute were procedural and that rule 1.090(b) allowed the trial court to consider an untimely motion upon showing of excusable neglect and no prejudice. The supreme court agreed with Gilbert and explained:
"This Court has previously confronted questions concerning the proper interpretation of these offer-of-judgment statutes. See, e.g., Knealing v. Puleo, 675 So.2d 593 (Fla.1996); TGI Friday's, Inc. v. Dvorak, 663 So.2d 606 (Fla.1995); Timmons v. Combs, 608 So.2d 1 (Fla. 1992); Leapai v. Milton, 595 So.2d 12 (Fla.1992). In each of these cases, we recognized that the Florida Rules of Civil Procedure controlled the procedural elements of the statutes. See, e.g., Timmons (adopting procedural portions of section 768.79 as Rule of Civil Procedure 1.442). Specifically, in Knealing, we found that section 44.102, Florida Statutes (1993), which only altered the time limits for making an offer of judgment, was a procedural statute that intruded on this Court's rule-making authority. Knealing, 675 So.2d at 596.
In accord with this analysis, we agree with the First District in Gilbert and hold that the time periods in these statutes are procedural and are governed by the Florida Rules of Civil Procedure. Consequently, we hold that these periods may be enlarged under Florida Rule of Civil Procedure 1.090(b). See Gilbert, 664 So.2d at 339. This rule allows a court to enlarge a time period prescribed by the rules for cause shown (1) with or without notice if the request is made before the expiration of the period originally prescribed, or (2) subject to limited exceptions, with notice upon motion made after the expiration of the period if the failure to act was the result of excusable neglect."
694 So.2d at 676-677. Thus the supreme court's interpretation is certainly not consistent with a rationalethe one used by the majority todaythat the time provision "cannot possibly have any meaning other than setting a mandatory time frame" for filing motions for fees. The Gulliver Academy holding is clear that all of rule 1.442's time provisions, even those fixing a bar date for filing a motion for fees, are not mandatory. Some are subject to adjustment by the trial judge under rule 1.090(b).
It is for that reason immediately apparent why the majority's attempt to make the author of Schmidt v. Fortner, 629 So.2d 1036 (Fla. 4th DCA 1993), swallow his words is ineffectual. In Schmidt, we confronted a trial judge's decision inferring a substantive condition not expressly stated in the text of the statute. The Schmidt trial court had effectively read into section 768.79 a requirement that an offeror have a reasonably reliable basis for the amount of an offer. In explaining the statutory entitlement for fees, we understandably plumbed the text to ascertain whether it could possibly have "any other meaning" along the lines given it by the *269 trial judge. That is obviously at a great remove from the circumstance we face here, a purely technical variance from a procedural provision, one whose breach i.e., if it were a breachis wholly inconsequential. The Schmidt analysis of statutory text is thus quite different from the majority's reading of procedural text.
In Spruce Creek Dev. Co. of Ocala, Inc. v. Drew, 746 So.2d 1109 (Fla. 5th DCA 1999), a party against whom fees had been awarded argued that rule 1.442 should be interpreted as the majority has done in this case. There the offeror failed to "identify the applicable Florida law under which it was being made." See Fla. R. Civ. P. 1.442(c)(1) ("A proposal shall be in writing and shall identify the applicable Florida law [e.s.] under which it is being made."). The offeree argued that the offer was void because it failed to comply with this mandatory provision of the rule. Of course, the provision involved in our case is identically mandatory. Or as the majority would have it "shall means shall." In Spruce Creek, however, the Fifth District disagreed, explaining that "[t]his is an insignificant technical violation of the rule." [e.s.] 746 So.2d at 1116.
Similarly, in Flight Express, Inc. v. Robinson, 736 So.2d 796 (Fla. 3d DCA 1999), an offer under section 768.79 failed to specify the amounts that each of the several offerors intended to contribute to the payment. Rule 1.442 provided that "[a] joint proposal shall state the amount and terms attributable to each party ...." [e.s.] Again, the import of this provision is identical to that involved in the case we face today. Rejecting the kind of rationale employed by the majority in this case, however, the Third District held that:
"the failure to follow the rule as to offerors must be considered merely a harmless technical violation which did not affect the rights of the parties." [e.s.] 736 So.2d at 797. The majority's decision in the present case is contrary to the Third District's.
More recently, in Danner Constr. Co., Inc., v. Reynolds Metals Co., 760 So.2d 199 (Fla. 2d DCA 2000), the defect in Flight Express was replicatedthat is, the joint offerors failed to specify how much each would contribute to the offer if accepted. In rejecting the "shall-means-shall" analysis of the majority and instead adopting the holding of Flight Express, the Second District said:
"Both Flight Express and Spruce Creek consider the failure of offerors to divide the amount to be contributed by each to be a harmless technical violation of the rule. Danner urges this court to align itself with the reasoning set forth in these opinions. We accept the reasoning as applied to the facts of these cases. However, we do not accept as a general proposition that the failure of offerors to divide the amount to be contributed should always be considered a harmless violation of the rule. Instead, we conclude that where a joint offer is made by the defendants in a case, the failure to specify the amount to be contributed by each may be harmless if the theory for the defendants' joint liability does not allow for apportionment under section 768.81. This circumstance typically exists in cases where one defendant is vicariously liable for the negligence of another." [c.o., e.s.]
Id. at 202.
Danner Construction shows that technical violations of the seemingly mandatory provisions of rule 1.442 as to how offers are to be made must be considered against the facts and circumstances of the case. Courts must determine whether any discrepancy by an offeror with the rule's seemingly mandatory requirements actually affects any interest of a party. Today's *270 decision fails to follow these four decisions and conflicts with all of them on how some of the time provisions of the rule should be applied.
As another justification for its mechanical reading of this procedural provision, the majority argues that the 90 day provision is mandatory because it must be strictly construed. Of course, in Gulliver Academy the supreme court has held that rule 1.442 should be pragmatically, not strictly, construed. If the majority's logic, "shall means shall," were the correct principle governing application of the similarly worded provisions in rule 1.442, then Gulliver Academy would have held that the "mandatory" period for filing motions for attorney's fees could not be enlarged and the 30 day provision should beas the majority insists hererigidly enforced.
Instead of following Gulliver Academy, the majority draws on dicta in this court's decision in Schussel v. Ladd Hairdressers, Inc., 736 So.2d 776 (Fla. 4th DCA 1999). The Schussel provision required that any offer be made not later than 45 days before trial might begin. Consequently, we were interpreting a bar date for offers, not a provision delaying offers until a party has time to ascertain its position. The obvious purpose of setting a fairly rigid deadline to make offers of settlement is consistent with a central purpose of the statute to settle cases before the system gears up for trialto avoid an unnecessary call on its resources. No similar function is served by a provision delaying offers at the beginning of a case, and thus there is no necessity for the kind of rigid enforcement applied to deadlines or bar dates for offers.[6] Therefore it is the functional purpose of the deadline for offers that compelled the result in Schussel, not the dictum of any supposed strict construction of punitive statutes.[7]
Too early is not like too late. A delaying provision is not a deadline. Arriving too early to board is fundamentally different from arriving after the plane has left the gate. Just as one recognizes a difference in consequences from being in line beforehand and getting there after the train has already left the station, so the law applies different consequences to filing or doing an act prematurely[8] and filing or *271 doing an act too late. It will tolerate a filing three days too early by merely suspending the filing or even disregarding the undue haste, but usually it will not forgive being even one day late in filing a claim or a notice. The difference arises from the differing functions of a delaying provision and a deadline. The purpose of a delaying provision is to postpone action, while a deadline aims to invalidate notices or claims after they become stale. Thus, bar dates enforcing deadlineslike statutes of limitationhave always been meant to act according to the letter of their prescribed time. It is this fundamental distinction that the majority has overlooked in its literal and mechanical construction of "shall be served no earlier than."
Still another example of unreasonable literalness is the implied conclusion that the word serve in rule 1.442 is equivalent with mailing. While I agree that mail is one of the two general methods for service defined by rule, and that mail service is "complete upon mailing,"[9] it does not necessarily follow for purposes of making an offer of judgment that the offer is made when it is merely mailed and before it is received. Because the intrinsic function of making an offer is to induce consideration of its content to settle the case if possible, I should think that an offer would be effective only when it is actually received. Would the majority be willing to hold an offeree bound by an offer that was so "served" by mail but never actually received?
The trial judge obviously recognized these considerations. In awarding fees under section 768.79, Judge Baker explained that he granted the motion:
"based, inter alia, upon the legal reasoning and analysis set forth in Hanzelik v. Grottoli & Hudon Investment of America Inc., 687 So.2d 1363 (Fla. 4th DCA 1997); Galuppi v. Viele, 232 So.2d 408 (Fla. 4th DCA 1970); Berkman v. Foley, 709 So.2d 628 (Fla. 4th DCA 1998); M-5 *272 Communications Inc. v. ITA Telecommunications Inc., 708 So.2d 1039 (Fla. 3rd DCA 1998).... [T]he spirit of the modern Rules of Civil Procedure is best served where as here procedural niceties which have no bearing upon the rights of parties are forgiven."
The final sentence shows that he thought any violation of the 90 day delaying provision was inconsequential, a mere technical variation that affected no legitimate concern of the offeree.
The cases he cited further explain his thinking. In Hanzelik, an offer of judgment was made less than 30 days before trial, and it was accepted within the 30 day period but after trial had ended. The trial judge read section 768.79 to mean that an offer served less than 30 days before trial begins is deemed rejected or withdrawn as of the start of trial. On review, we held the 30 day acceptance provision in section 768.79 was a procedural requirement that was adopted by the supreme court in Timmons v. Combs, 608 So.2d 1 (Fla.1992). We also held that the strict construction usually necessary with statutory requirements dealing with entitlement to fees was not required in the interpretation of provisions arising under the rules of procedure. By affirming the holding that the unaccepted offer expired at trial, we essentially bowed to the trial judge's determination that it was unjust to allow the offeree to accept the offer after trial, whose result was contrary to the offeree, had ended. Not actually mentioned in the Hanzelik opinionbut surely underlying our decision is the obvious truth that an award of fees under section 768.79 founded on an offer accepted only after trial had already ended would be wildly inconsistent with the statute's principal purpose to facilitate settlement before a trial.
In Galuppi, we liberally construed a procedural provision dealing with the relation-back of some amendments to pleadings against a party who, we said, "hid in the grove and finally struck plaintiff from ambush." In Berkman we essentially allowed a party to adduce evidence to clear up a misnomer as to the party on whose behalf a person had signed a contract, saying that "`the courts will not allow the practice of the `Catch-22' or `gotcha!' school of litigation to succeed.'" 709 So.2d at 629. To the same effect is M-5 Communications, another condemnation of a "gotcha" ruling from its very creator. Judge Baker plainly viewed defendant's argumentthat the 3-day early mailing of the offer was fatalas a "gotcha" of the "purest form." See M-5 Communications, 708 So.2d at 1039.
Florida has long followed a policy of flexible interpretation and application of procedural rules, unlike substantive enactments of the legislature. As our highest court said 70 years ago:
"where the strict enforcement of the letter of the rules of practice tends, in the opinion of the trial judge, to prevent or jeopardize the latter, the rules should yield to the higher purpose."
Demos v. Walker, 99 Fla. 302, 126 So. 305 (1930); see also O'Gara v. Hancock, 76 Fla. 1, 79 So. 167 (1918). More recently the court stated the same policy thus:
"Although there is no question that ... rules are not to be ignored to rectify counsels' mistakes, if justice to all parties is not thereby denied, in special circumstances, special concessions should be made."
Ford v. Ford, 150 Fla. 717, 8 So.2d 495, 496 (1942). Even more recently the court said, "[p]rocedural rules should be given a construction calculated to further justice, not to frustrate it." Singletary v. State, 322 So.2d 551 (Fla.1975); see also Eastwood v. Hall, 258 So.2d 269 (Fla. 2d DCA 1972). From the majority's "any other meaning than mandatory" analysis, one *273 might think these principles about the enforcement of procedural requirements have been changed.[10]
No one suggests that plaintiff's anticipatory mailing of an offer of settlement so near the expiration of the 90 day period somehow conflicts with the purpose of the condition to delay offers. Nor does defendant suggest that it actually received the offer any earlier than after the full 90 day period had run or, indeed, that it was prejudiced by the early mailing.[11] The only challenge here is in the mailing 3 days before the lapse of the full 90 day period which, under the circumstances, is a meaningless quibble.[12] It is thus manifest that both the letter and the purpose of this procedural condition have been completely vindicated. There is no just reason to refuse to treat the offer as effective.
In a well-known opinion, a very wise judge explained why literalistic interpretations of statutory provisions are usually improvident:

"Courts ... have refused to be bound by the letter, when it frustrates the patent *274 purpose of the whole statute.... Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." [c.o., e.s.]
Cabell v. Markham, 148 F.2d 737, 739 (2nd Cir.1945), affirmed, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). The wisdom of Learned Hand has only an intensified application to procedural strictures.
The uncritical syllogistic logic of the court's decision today is a retreat to Hand's fortress of literalism. It amounts to a withdrawal from the field of analysis and reason to the citadel of indiscriminate textual rigidity. It is as though the wordsshall be served no earlier than 90 dayshave no meaning or purpose beyond what the dictionary says. Because the decision is at odds with a wealth of authority in this state to the contrary, I dissent.
NOTES
[1] Contrary to the position taken by the dissent, rule 1.442 is punitive in nature because it imposes sanctions upon the losing party and, thus, is in derogation of the common law. Id. at 778 (citations omitted).
[2] As one professor of statutory interpretation has explained:

"Literalism should be distinguished from the genuine search for textual meaning based on the way people commonly understand language. Literalism is a kind of `spurious' textualism, unconcerned with how people actually communicatewith how the author wanted to use language or the audience might understand it. It holds up text in isolation from actual usage."
William D. Popkin, MATERIALS ON LEGISLATION: POLITICAL LANGUAGE AND THE POLITICAL PROCESS 214 (2d ed.).
[3] See § 768.79, Fla. Stat. (1999).
[4] See Fla. R. Civ. P. 1.442(b) ("A proposal to a defendant shall be served no earlier than 90 days after service of process on that defendant...").
[5] Also according to plaintiff, necessary discovery was completed a few days after September 8th. Defendant does not challenge this assertion either.
[6] Contrary to the majority's assertion, Schussel says absolutely nothing suggesting that "under rule 1.442 there is no difference between offers that are served prematurely and those that are served too late." There is not a word in Schussel that even hints at the subject of offers being served prematurely.
[7] It is impossible to ascertain where the Schussel panel got its idea that an entitlement to attorneys fees under an offer of judgment statute is punitive. The statute may impose a cost on the failure to settle but that is hardly punishment, any more than awarding costs to the prevailing party is punishment for losing.

In any case, as this court held in Sholkoff v. Boca Raton Community Hosp., Inc., 693 So.2d 1114 (Fla. 4th DCA 1997), the notion of strict construction of attorneys fee provisions is something of a misnomer. The truth is that provisions for attorneys fees must simply be clear.
[8] See, e.g., Williams v. State, 324 So.2d 74, 79 (Fla.1975) (dismissal of premature appeal improper; case remains in limbo until ripe for filing); Thomas v. Suwannee County, 734 So.2d 492 (Fla. 1st DCA 1999) (general rule is that action filed prematurely should be abated, not dismissed, until cause of action matures; premature filing of action challenging zoning decision could not be dismissed with prejudice; lapse of presuit filing period made premature filing inconsequential); Williams v. Henderson, 687 So.2d 838, 839 (Fla. 2d DCA 1996) (failure to give agency presuit notice of claim and premature filing of action covered by waiver of sovereign immunity does not require dismissal; action should instead be merely abated); Interlatin Supply, Inc. v. S & M Farm Supply, Inc., 654 So.2d 254 (Fla. 3d DCA 1995) (premature filing of farmer's breach of warranty action for defective seed without prior notice to department of agriculture required abatement rather than dismissal); Angrand v. Fox, 552 So.2d 1113 (Fla. 3d DCA 1989) (premature filing of medical malpractice claim before lapse of 90 days notice provision not fatal to action, which could be abated; subsequent lapse of limitations period precludes dismissal of action on account of premature filing), review denied, 563 So.2d 632 (Fla.1990); Allied Fidelity Ins. Co. v. State, 384 So.2d 727 (Fla. 3d DCA 1980) (same); Holding Elec., Inc. v. Roberts, 530 So.2d 301 (Fla.1988) (in mechanic's lien action complaint filed without prior service of contractor's affidavit abated pending amendment of pleading to show compliance with condition precedent to suit); cf. Dhondy v. Schimpeler, 528 So.2d 403 (Fla. 3d DCA 1988), review denied, 534 So.2d 401 (Fla. 1988) (prior action pending on same claim does not justify dismissal but only abatement); Lindberg v. Hospital Corp. of Am., 545 So.2d 1384 (Fla. 4th DCA 1989) (abatement pending compliance with notice provisions of § 768.57), approved, 571 So.2d 446 (Fla. 1990); Solimando v. International Med. Ctrs., H.M.O, 544 So.2d 1031 (Fla. 2d DCA 1989) (same); see also 1 AM.JUR.2D Abatement, Survival, and Revival § 4 (1962) (premature commencement is ground for abatement of action even though cause of action accrues before trial); 1 FLA. JUR.2D, Actions § 81 (1997) (abatement of action prematurely commenced before accrual of the cause of action is proper remedy).

Both Thomas and Angrand involved a violation of statutory conditions precedent to the commencement of civil actions. It might thus be argued that, because the conditions precedent were statutory in origin, courts had no power to forgive noncompliance and that the violation of the statutory condition resulted in a nullity. Clearly that is not so. In each case the court examined the nature of the condition precedent, as well as the circumstances surrounding the premature act and found that abatement of the action fully satisfied the nature of the statutory condition imposed.
[9] See Fla. R. Civ. P. 1.080(b) ("Service ... shall be made by delivering a copy or mailing it ... at the last known address.... Service by mail shall be complete upon mailing.").
[10] In analogous circumstances, this very court has several times employed the policy articulated by the supreme court to construe procedural provisions, instead of the formalistic literalism used by the majority today. In fact, one such instance is the very Hanzelik decision relied on by Judge Baker in this case. There we said:

"A trial court is generally obligated to apply a strict interpretation to substantive legislative enactments.... However, such rigid construction is not required in judicial interpretation of rules of procedure. See Fla. R.Civ.P. 1.010 (1996). (`These rules shall be construed to secure the just, speedy, and inexpensive determination of every action.')." [e.s.]
Hanzelik, 687 So.2d at 1365. As we also succinctly stated in In re Rutherfurd's Estate, 304 So.2d 517 (Fla. 4th DCA 1974):
"However, in special circumstances, special concessions should be made. When it appears that rigid enforcement of procedural requirements would defeat the great object for which they were established, the trial judge should relax them, if it can be done without injustice to any of the parties."
304 So.2d at 520 (citing Ford, 8 So.2d 495). Another decision rejecting a literal application of rules of procedure is Dobrick v. Discovery Cruises, Inc., 581 So.2d 645, 646 (Fla. 4th DCA 1991), where we ignored the rule's requirement of a "final" order and accepted jurisdiction over orders merely granting a motion. See also Sloman v. Florida Power & Light Co., 382 So.2d 834 (Fla. 4th DCA 1980) (notice of appeal prematurely filed in this cause remained in limbo until the final judgment was rendered, whereupon the notice of appeal matured and jurisdiction vested in this court). Today's decision is obviously inconsistent with these prior decisions of this court.
[11] Suppose for example that plaintiff had given the offer to a message delivery service on the 87th day with instructions not to make actual delivery until the 90th day. Would the majority deem that equally a violation of the 90 day service provision? Is that functionally any different from placing the document in the mail at the close of business on Friday, knowing that it will not be delivered until the following Tuesday?
[12] In a rejoinder to a slippery slope argument, Justice Holmes vociferated: "not while this Court sits." Panhandle Oil Co. v. Mississippi ex rel. Knox, 277 U.S. 218, 223, 48 S.Ct. 451, 72 L.Ed. 857 (1928) (Holmes, J., dissenting from the invalidation of state sales taxes on goods and services sold to the United States government, and responding to John Marshall's dictum that "the power to tax is the power to destroy"). So, too, I could argue that my holding in today's case would lead to a parade of horribles only if we let it.

In truth, I have not sought to redraw the line as to where the time for making offers should begin; so there is no plausible argument that I would also validate an offer made, say, some 60 days after service or 25 days or other such number. The principle I espouse is not that any violation of the 90 day rule should be tolerated, to the alteration or elimination of the rule itself. Instead I merely hold that mailing an offer 3 days before the expiration of the 90-day period is not a violation of the rule where, as here, the offer could not possibly have been received and read until after the whole 90 day period had elapsed.