914 So.2d 474 (2005)
Tanya Truman HAUSS, Appellant,
v.
Benjamin Samuel WAXMAN, German Vucetich, and Ian Vucetich, Appellees.
No. 4D04-2685.
District Court of Appeal of Florida, Fourth District.
November 2, 2005.
Ronald P. Gossett of Gossett & Gossett, P.A., Hollywood, for appellant.
Esther E. Galicia of George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, Fort Lauderdale, for appellee Benjamin Samuel Waxman.
PER CURIAM.
Affirmed.
*475 GUNTHER and TAYLOR, JJ., concur.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
I join the affirmance, but I think it is important to set out in detail some problems with the outcome.
The supreme court has made clear that plaintiffs' offer of judgment is deficient in failing to apportion the proposed amount between the two offering spouses, and therefore the offer failed to create an entitlement to attorneys fees. In Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d 276 (Fla.2003), the court expressly held that rule 1.442 requires offers of judgment made by multiple offerors to apportion the amounts attributable to each offeror. The court held that the language of rule 1.442 "must be strictly construed because the offer of judgment statute and rule are in derogation of the common law rule that each party pay its own fees." 849 So.2d at 278. The court has recently repeated this rationale in Lamb v. Matetzschk, 906 So.2d 1037 (Fla.2005), saying that strict construction demands a differentiated joint proposal, even when one defendant's alleged liability is purely vicarious. In this opinion I want to explore the court's rationale for strict construction of the rule governing settlement offers (as distinct from the statute) and show why a different principle of construction should be employed.
The origin of the court's policy of strictly construing statutes creating an entitlement to attorneys fees stretches back decades, and in one sense even centuries. Nearly fifty years ago, in Great American Indemnity Co. v. Williams, 85 So.2d 619, 623 (Fla.1956), the court said: "the award of attorneys fees is in derogation of common law and that acts for that purpose should be construed strictly."[1] [e.s.] Great American relied on Weathers ex rel. Ocean Accident & Guarantee Corporation v. Cauthen, 152 Fla. 420, 12 So.2d 294 (Fla.1943), and Weathers held that statutes in derogation of the common law must be strictly construed. 12 So.2d. at 295. My point here is that the court's original basis for strict construction of attorneys fees statutes was the ancient canon of statutory construction involving legislative changes in the common law. The court's reasoning had nothing to do with the idea that statutes for attorneys fees are penal in nature.
Two decades later, the court repeated this holding in Sunbeam Enterprises, Inc. v. Upthegrove, 316 So.2d 34, 37 (Fla.1975), and relied on both Great American and Weathers. Only two years after Sunbeam, the court relied on it in Roberts v. Carter, 350 So.2d 78 (Fla.1977), where it stated: "The fundamental rule in Florida has been that an `award of attorneys' fees is in derogation of the common law and that statutes allowing for the award of such fees should be strictly construed.'" 350 So.2d at 78-79. Nearly a decade later, Roberts was the basis for strict construction of attorneys fees statutes in Finkelstein v. North Broward Hospital District, 484 So.2d 1241 (Fla.1986). We are still talking about statutes, not rules, being read under the derogation canon.
Finkelstein led to Gershuny v. Martin McFall Messenger Anesthesia Professional Ass'n, 539 So.2d 1131, 1132 (Fla.1989) ("Florida requires that statutes awarding attorney's fees must be strictly construed"). Gershuny was then the basis for Dade County v. Peña, 664 So.2d 959, 960 (Fla.1995), repeating the same principle and the derogation canon. It is interesting to note that the plain meaning of the statute authorized fees only in actions for *476 wages and that Peña had sued for reinstatement. Id.
The purpose of walking through these supreme court decisions on the construction of statutes providing for attorneys fees is to show that all of them involved statutory construction and applied the derogation canon calling for strict construction when a statute changes the common law. That distinction is central in considering the court's most recent decisions requiring strict construction of a rule of procedure.
I turn now to the two supreme court decisions cited in my opening paragraph, Lamb and Willis Shaw. Willis Shaw was the first to hold that rule 1.442 must be strictly construed. Without any explanation, the court simply said: "because the offer of judgment statute and rule are in derogation of the common law rule that each party pay its own fees." [e.s.] 849 So.2d at 278. The supreme court opinion in Willis Shaw apparently lifted the notion of strictness about a rule from the First District's opinion in the same case where it appears without justification or elaboration.[2]Lamb then simply repeated the same holding. 906 So.2d at 1044. The supreme court's unprecedented application of a statutory canon's strict construction in Willis Shaw to a rule of procedure seems almost off-handed and casual.
The problem is that this use of the derogation canon is not congruent with rules of procedure. The supreme court's power to adopt rules is limited to "practice and procedure in all courts. . . ." § 2(a), Art. V., Fla. Const. By their very nature such rules can have nothing to do with changing substantive law. See Timmons v. Combs, 608 So.2d 1, 3 (Fla.1992) (rule of court can control only procedural matters). The derogation canon was adopted for statutory changes in the common law, namely substantive law. From the historical context of its adoption and by its very nature and purpose, the derogation canon is ill-suited to procedural rules. See Blankfeld v. Richmond Health Care Inc., 902 So.2d 296, 305 (Fla. 4th DCA 2005) (Farmer, J., concurring) (discussing historical origins of substantive canons).
Meanwhile, lying almost unnoticed in the legal foreground is the fact that in a previous exercise of its formal rule-making power, the supreme court had already laid down in the text of the civil rules their own unique interpretive principle. The very first rule says: "These rules shall be construed to secure the just, speedy, and inexpensive determination of every action." Fla. R. Civ. P. 1.010. In the commentary to rule 1.010, the court has even amplified on how this interpretive principle for the rules should be applied:
"The direction that the rules `shall be construed to secure the just, speedy, and inexpensive determination of every action' has two courses. It is, first, a direction that if a rule needs interpretation, the stated objective is the guide. The direction recognizes that procedural law is not an end in itself; it is only the means to an end. And that end is the proper administration of the substantive law. Procedural law fulfills its purpose if the substantive law is thereby administered in a `just, speedy, and inexpensive' manner. . . . It is, next, a direction that each rule shall be applied with that objective in mind, especially where the *477 court may exercise a judicial discretion." [e.s.]
30 Fla. Stat. Ann. 11 (1985). In short, the settled, formal principle within the rules themselves for interpreting the rules is not one of strict construction  or woodenly enforcing every failure to follow procedural rules  but instead an equitable guide of just application.
Not long after the adoption of both the civil and criminal rules, the supreme court had occasion in a direct appeal to explain how the principle of "just, speedy and inexpensive" construction of the rules of procedure should be applied in individual cases:
"The modern trend in both criminal and civil proceedings is to excuse technical defects which have no bearing upon the substantial rights of the parties. When procedural irregularities occur, the emphasis is on determining whether anyone was prejudiced by the departure. A defendant is entitled to a fair trial, not a perfect trial." [c.o.]
Lackos v. State, 339 So.2d 217, 219 (Fla.1976). The court formulated the following standard for violations of procedural rules' requirements: "[w]e agree that a showing of prejudice should be a condition precedent to undertaking the kind of procedural niceties envisioned by [prior decisions strictly enforcing a procedural rule]." [e.s.] The court has since repeated the same principle in State v. Anderson, 537 So.2d 1373, 1375 (Fla.1989). Even more recently in a post-Willis Shaw holding, the court has specifically reaffirmed the Lackos principle in State v. Clements, 903 So.2d 919, 921 (Fla.2005). The interpretive principle set down in rule 1.010, and only just reaffirmed in Clements, contrasts starkly with the derogation canon, which the court has interpreted to require unyielding inflexibility with "technical defects" and "procedural irregularities".
The supreme court's abrupt change in Willis Shaw appears wordlessly contrary to precedent settling it in a contrary way. Willis Shaw has all the earmarks of a stealth overruling of settled precedent. But we were recently taught that the supreme court does not overrule itself without expressly saying so. Puryear v. State, 810 So.2d 901, 905 (Fla.2002). We were instructed that:
"Where a court encounters an express holding from this Court on a specific issue and a subsequent contrary dicta statement on the same specific issue, the court is to apply our express holding in the former decision until such time as this Court recedes from the express holding. Where this Court's decisions create this type of disharmony within the case law, the district courts may utilize their authority to certify a question of great public importance to grant this Court jurisdiction to settle the law."
810 So.2d at 905-06. It bears remembering that Lackos actually considered and explained which interpretive principle should be applied to procedural rules, while Willis Shaw merely relied on a contradictory interpretive principle without considering or explaining why Lackos will no longer be followed.
Has the court retreated from the policy employed in Lackos and Clements, or hasn't it? If the retreat is only for rules about attorneys fees, why are they being treated differently? And if rules about fees are to be "strictly" construed because they are thought to be sanctions and therefore penal, why not also rules involving all other sanctions in the civil rules? And what about interest and costs? Indeed, why not rules providing for dismissal of claims or defenses?
On the other hand, if the old interpretive principle about equitable and just application could be properly applied in criminal *478 cases  where punishment is the very purpose  what is the justification for carving out a contrary principle for penal sanctions in civil cases just because attorneys fees are being imposed? It is difficult to believe that attorneys fees are more penal than incarceration and criminal fines! In a nutshell, Willis Shaw and Lamb do not seem to be coherent with the surrounding body of law.
There is an unsavory and inconvenient truth omitted from any discussion in these opinions. The offer of judgment statute is functionally and unfairly one-sided. The statute is biased in favor of those who are being sued for money damages  those parties who alone can make nominal offers merely to set up a claim for attorneys fees when the litigation is over. There is no comparable offering stratagem whereby claimants can make nominal offers without risk, merely to set up an entitlement under section 768.79 to attorneys fees.
Yes, that one-sided disadvantage is something only the Legislature can correct. But instead of illuminating the statute's disparity by explicit discussion, the derogation canon obscures this severe inequity in a haze of strict construction. Ironically, strict construction ultimately ends up visiting even more unfairness on some claimants who are  in this instance, anyway  deprived of an entitlement to fees because of a "technical defect" or "procedural irregularity" in an offer that had no effect on the offeree.
The central difficulty contributing to decisional incoherence is in portraying awards of attorney fees under the offer of judgment statute as penal. As with interest, there is no good reason for courts to resist recognizing that the Legislature has made offer of judgment attorney fees just another litigation cost. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 214 (Fla.1985) (prejudgment interest is merely another element of pecuniary damages). The offeree is paying the cost of exercising the privilege of continuing to litigate after a qualifying offer has been made.[3] Although the attorneys fees can be onerously high, the imposition of an entitlement to fees under section 768.79 operates no more punitively (except for its inequality) than other consequences experienced routinely and frequently in ordinary litigation.
There is a penal nature inherent in all law. Indeed the central feature of the entire American legal system is its coercive effect. The system functions on legal coercion. Every time the court enters a money judgment, an injunction or a decree, every time it imposes costs, fees and interest, it vindicates the judgment with the coercive force of final process. As a matter of routine coercion of law's decisions, individuals can have their property taken in a levy of execution, they can be held in contempt, they can be made to pay a fine, and they can even be incarcerated. All of this is surely penal in the sense that Willis Shaw uses the term. The imposition of fees is just one more legal coercion to vindicate a specified outcome mandated by the Legislature's choice of substantive policy in civil litigation. If judges are suddenly going to seize upon this routine penal nature of their decisions as a justification for a few specific outcomes only in some cases, the rationalization is saying both far too much and yet nothing at all. All law is penal in the sense of Willis Shaw.
*479 As for strict or liberal construction, I think it is well past time to give up this odd reliance on such illusory tests as strict or liberal construction to interpret legal writings, whether they be statutes, rules or contracts. The goal in all such instances should be to interpret the writing correctly, to construe them as they were meant by their author. These strict and liberal canons may seem to point in one direction or another, but they lend no actual insight into how a set of words must be applied in a specific circumstance. See Blankfeld, 902 So.2d at 303-06 (Farmer, J., concurring) (discussing use of substantive canons). In the end, these elastic notions are tendentious, a justification for an application by judicial fiat rather than a true illumination of how an interpretation was reached.
Returning to the case in point, the meaning of rule 1.442 has nothing to do with strict or liberal construction. There happens to be an explicit drafting imperative in this rule's very text, one setting out its plain requirements for those preparing an offer of settlement. The rule explicitly requires particularity in all offers. See Fla. R. Civ. P. 1.442(c)(2) ("A proposal shall . . . (C) state with particularity any relevant conditions; (D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal. . . ."); Swartsel v. Publix Super Mkts. Inc., 882 So.2d 449, 452 (Fla. 4th DCA 2004) ("Rule 1.442 . . . requires that proposals for settlement state with particularity any relevant conditions and all nonmonetary terms.").[4] For all I know the results in Willis Shaw and Lamb may be coherent, but not because of any "strict" construction of the rule. Particularity is literally what the rule requires. The offers in those cases failed to create an entitlement to fees because they lacked the necessary particularity.
In the case we face today, I doubt very much that the failure to particularize actually affected the response to the offer. But because of the holdings in Willis Shaw and Lamb I am required to vote to affirm.
NOTES
[1] The reference to "acts" is of course to statutes.
[2] See Hilyer Sod, Inc. v. Willis Shaw Express, Inc., 817 So.2d 1050, 1054 (Fla. 1st DCA 2002), where the district court said: "Moreover, the offer of judgment statute and rule should be strictly construed because the procedure is in derogation of the common law and is penal in nature." [e.s.] The use of penal to describe rules of procedure is thus dropped into Florida jurisprudence like a deus ex machina.
[3] Nonetheless, it is important to perceive that this cost can be a significant detriment, one that is capable of chilling access to justice.
[4] I appreciate the fact that the rule's text appears to conjoin particularity only with the "relevant conditions" and all "nonmonetary" aspects of an offer. That is, the amount of an offer would appear to be excluded from the particularity requirement. But one can hardly offer an ambiguous sum  in other words, an unparticularized amount  of money to settle a case. For example, offering only "a generous amount" would hardly be capable of leading to an identifiable result. To be enforceable, any amount would have to be specific  or, in the language of the rule, particular. The real meaning of particularity is that all elements of an offer must be clear, specific and detailed.