920 So.2d 1264 (2006)
Clivens GOLDMAN, Appellant,
v.
Rose G. CAMPBELL, Appellee.
No. 4D04-4920.
District Court of Appeal of Florida, Fourth District.
March 1, 2006.
Arnold R. Ginsberg of Ginsberg & Schwartz, Miami, and Nicole S. Freedlander of Nelson & Freedlander, Miami, for appellant.
Richard A. Sherman of the Law Offices of Richard A. Sherman, Fort Lauderdale, and Samuel Tyler Hill of Hill & Lemongello, P.A., Fort Lauderdale, for appellee.
*1265 TAYLOR, J.
Clivens Goldman, the plaintiff below, timely appeals the denial of his motion for attorney's fees and costs. His motion for fees and costs was filed pursuant to section 768.79, Florida Statutes, after he recovered a net verdict/judgment in an amount twenty-five percent greater than his Proposal for Settlement. The trial court denied the plaintiff's motion because the proposal did not cite the statutory provision upon which the proposal was made. We reverse with directions to grant the plaintiff's motion for attorney's fees.
On August 13, 1999 and again on November 17, 2003, plaintiff served the defendant, Rose G. Campbell, with a notice of filing of plaintiff's proposal for settlement for $10,000. The proposal was never accepted, nor was it filed with the court. Although the proposal referenced Florida Rule of Civil Procedure 1.442, it did not cite the applicable statute, section 768.79, Florida Statutes. Subsequently, on May 27, 2004, the plaintiff was awarded a jury verdict in the amount of $18,900, which was twenty-five percent more than was offered in the settlement proposal. A final judgment for the same amount was rendered.
An offer of settlement must comply with both rule 1.442 and section 768.79. Rule 1.442(c)(1) (1999) states: "A proposal [for settlement] shall be in writing and shall identify the applicable Florida law under which it is being made." (Emphasis added). Section 768.79(6)(b) (1999) reads: "If a plaintiff serves an offer which is not accepted by the defendant, and if the judgment obtained by the plaintiff is at least 25 percent more than the amount of the offer, the plaintiff shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served." Subsection (2) lists the requirements of a valid settlement offer:
(a) Be in writing and state that it is being made pursuant to this section.

(b) Name the party making it and the party to whom it is being made.
(c) State with particularity the amount offered to settle a claim for punitive damages, if any.
(d) State its total amount.
(Emphasis added).
The Florida Supreme Court has recognized that both rule 1.442 and section 768.79 are in derogation of the common law rule that parties are responsible for their own attorney's fees. See Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d 276, 278 (Fla.2003). It has thus held that the statute and rule must be strictly construed. See Major League Baseball v. Morsani, 790 So.2d 1071, 1078-79 (Fla.2001) ("[A] statute enacted in derogation of the common law must be strictly construed.... The presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard."); TGI Friday's, Inc. v. Dvorak, 663 So.2d 606, 615 (Fla.1995) (Wells, J., concurring in part and dissenting in part) (stating that statutes that award attorney's fees, such as 768.79, must be strictly construed). Strict construction is required of both the statute and the rule "[b]ecause attorney fees awarded under the offer of judgment statute are sanctions against the party whom the sanction is levied." Sarkis v. Allstate Ins. Co., 863 So.2d 210, 218 (Fla.2003).
Following this principle of strict construction, we have found settlement proposals invalid when they did not comply with the statutory and rule requirements. See Grip Dev., Inc. v. Coldwell Banker Residential Real Estate, Inc., 788 So.2d *1266 262, 265 (Fla. 4th DCA 2000) (holding settlement proposal served prematurely under Florida Rule of Civil Procedure 1.442 to be invalid and finding the premature service to not be an "insignificant technical violation" as in Spruce Creek Development Co. v. Drew, 746 So.2d 1109 (Fla. 5th DCA 1999)); Schussel v. Ladd Hairdressers, Inc., 736 So.2d 776, 778 (Fla. 4th DCA 1999) (affirming order denying offer of judgment because it was untimely); see also Hall v. Lexington Ins. Co., 895 So.2d 1161, 1166 (Fla. 4th DCA 2005) (pursuant to Florida Rule of Civil Procedure 1.442(c)(3), "a proposal to two or more plaintiffs who each have a claim for their own separate damages is normally unenforceable because it requires them to aggregate their damages or settle their separate claims in some collective fashion").
Several other district courts of appeal have similarly struck proposals. See Connell v. Floyd, 866 So.2d 90, 92 (Fla. 1st DCA 2004) (holding defendants not entitled to attorney's fees because settlement offer did not state non-monetary terms with particularity as required by Florida Rules of Civil Procedure 1.442(c)(2)(C) and (D)); McMullen Oil Co., Inc. v. ISS Int'l Serv. Sys., Inc., 698 So.2d 372, 373 (Fla. 2d DCA 1997) (holding that the offer of judgment was insufficient to satisfy statutory requirements where it failed to expressly state that it was made pursuant to the statute and merely referred to "all applicable Florida statutes and the Florida Rules of Civil Procedure"); Murphy v. Tucker, 689 So.2d 1164, 1165 (Fla. 2d DCA 1997) (holding that section 768.79 must be strictly construed); Pippin v. Latosynski, 622 So.2d 566, 569 (Fla. 1st DCA 1993) (holding offer invalid because it failed to reference section 768.79; omitting reference "failed to adequately place defendants on notice that Latosynski was traveling under section 768.79 in addition to the rule"); see also Hess v. Walton, 898 So.2d 1046, 1049 (Fla. 2d DCA 2005) (stating, "even a clear and unambiguous statute which imposes attorneys' fees or another penalty must be `construed' in favor of the common law").
Despite this authority, the plaintiff argues that failure to cite the statute in the settlement proposal is not fatal. He relies on language in the fifth district's opinion in Spruce Creek Development Co. of Ocala, Inc. v. Drew, 746 So.2d 1109 (Fla. 5th DCA 1999). In Spruce Creek, the court noted that the issue of attorney's fees was moot, but, for guidance on remand, stated that the plaintiffs' settlement proposal was not void for failure to expressly reference section 768.79. The court deemed the omission "an insignificant technical violation of the rule." Id. at 1116. It reasoned that "[n]ow that there is only one statute governing offers of judgment, implemented by Rule of Civil Procedure 1.442, the purpose of Rule 1.442(c)(1) is met where either the rule or the statute is referenced." Id. We adopt the fifth district's position in Spruce Creek on this issue and certify conflict with the first and second district courts' decisions in Pippin and McMullen Oil Company.
In this case, the plaintiff submitted his proposal for settlement on August 13, 1999, at a time when only one statute, section 768.79, existed under which offer of judgment/proposal for settlement attorney's fees were awardable. Hence, the concern for clarity and certainty we expressed in Grip Development and other cases scrutinizing settlement proposals is not a factor here.
Accordingly, we reverse the order denying the plaintiff's motion for attorney's fees.
Reversed.
POLEN, J., concurs.
*1267 FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
I reach the same outcome, and I join in certifying conflict. But there are more apposite supreme court decisions, and I have a different take. Because of the pervasiveness of the issue involved, I think I should set down once again  this time more thoroughly  my own analysis of the problems with the court's policy of strict construction when attorneys fees are at issue.[1]
The supreme court has long had a policy of strict construction in connection with attorneys fees. Recently in Willis Shaw Express Inc. v. Hilyer Sod Inc., 849 So.2d 276 (Fla.2003), the court approved a decision denying fees because of what may be a harmless defect in the offer. The district court had invalidated the offer, saying:
"[T]he offer of judgment statute and rule should be strictly construed because the procedure is in derogation of the common law and is penal in nature. Florida follows the common law approach to attorney's fees under which each party pays its own fees, absent a statutory or contractual provision to the contrary...."
"In addition, section 768.79 imposes a penalty for unreasonably rejecting a settlement offer. `Statutes imposing a penalty must always be construed strictly in favor of the one against whom the penalty is imposed and are never to be extended by construction.' Holmberg v. Dep't of Nat. Resources, 503 So.2d 944, 947 (Fla. 1st DCA 1987); see also TGI Friday's, Inc. v. Dvorak, 663 So.2d 606, 615 (Fla.1995) (`Statutes awarding attorney fees in the nature of a penalty must also be strictly construed.') (Wells, J., concurring in part and dissenting in part). This rule is so well-cemented in Florida law that the Florida Supreme Court has applied the rule without a great deal of explanation.... The abundance of case law cited by both parties in this case demonstrates that courts have generally applied a strict construction to section 768.79 and Rule 1.442 by the frequency with which they invalidate unspecified offers." [e.s.]
Hilyer Sod Inc. v. Willis Shaw Express Inc., 817 So.2d 1050, 1054 (Fla. 1st DCA 2002). In approving the decision of the First District, the supreme court said that the language of rule 1.442 "must be strictly construed because the offer of judgment statute and rule are in derogation of the common law rule that each party pay its own fees." [e.s.] Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d at 278. In Lamb v. Matetzschk, 906 So.2d 1037, 1040-41 (Fla.2005), the court simply cited and followed Willis Shaw without elaboration.[2] From these decisions it is apparent that the court has now justified strict construction of rule 1.442 (as opposed to the statute) because it believes attorneys fees are penal. To my mind, the court's rationale for strict construction of the rule for settlement offers is incoherent with its own prior decisions.
The origin of the court's policy of strictly construing statutes creating an entitlement to attorneys fees stretches back decades  and in one sense even centuries. Nearly fifty years ago, in Great American Indemnity Co. v. Williams, 85 So.2d 619, 623 (Fla.1956), the court said: "the award *1268 of attorneys fees is in derogation of common law and that acts for that purpose should be construed strictly."[3] [e.s.] Great American relied on Weathers ex rel. Ocean Accident & Guarantee Corporation v. Cauthen, 152 Fla. 420, 12 So.2d 294 (1943), and Weathers had also held that statutes in derogation of the common law must be strictly construed. 12 So.2d. at 295. My point here is that the court's original basis for strict construction of attorneys fees statutes was the ancient canon of statutory construction involving legislative changes in the common law, not that statutes for attorneys fees are penal in nature.
Two decades later, the court repeated this holding in Sunbeam Enterprises, Inc. v. Upthegrove, 316 So.2d 34, 37 (Fla.1975), relying on both Great American and Weathers. Only two years after Sunbeam, the court relied on it in Roberts v. Carter, 350 So.2d 78, 78-79 (Fla.1977) ("The fundamental rule in Florida has been that an `award of attorneys' fees is in derogation of the common law and that statutes allowing for the award of such fees should be strictly construed.'"). Nearly a decade later, Roberts was the basis for Finkelstein v. North Broward Hospital District, 484 So.2d 1241, 1243 (Fla.1986). Finkelstein led to Gershuny v. Martin McFall Messenger Anesthesia Professional Ass'n, 539 So.2d 1131, 1132 (Fla.1989) ("Florida requires that statutes awarding attorney's fees must be strictly construed"). Gershuny was then the basis for Dade County v. Peña, 664 So.2d 959, 960 (Fla.1995), repeating the same principle and the derogation canon.[4] We are still talking about statutes, not rules, being read under the derogation canon.
The purpose of walking through these supreme court decisions on the construction of statutes providing for attorneys fees is to make clear that all of them involved statutory construction and applied the derogation canon calling for strict construction when a statute changes the common law. None of them turns on a rule of penal lenity in the construction of attorneys fee statutes. That distinction is central in considering the court's most recent decisions requiring strict construction of a rule of procedure.
Willis Shaw was its first case to hold that a procedural rule must be strictly construed. Without any explanation, the supreme court simply asserted that "because the offer of judgment statute and rule are in derogation of the common law rule that each party pay its own fees." [e.s.] 849 So.2d at 278. The supreme court apparently borrowed the notion of penal strictness about the rule from the First District's opinion in the same case without elaboration or explanation.[5] Thus the use of penal to justify strict construction of rules of procedure was dropped into Florida jurisprudence like a deus ex machina. The court's application of a statutory canon's strict construction to a rule of procedure is unprecedented.
I repeat, it is also incoherent. Unmentioned in these opinions but lying elsewhere in the legal corpus is the court's earlier exercise of its formal rule-making power in which it adopted for the rules of civil procedure their own universal interpretive *1269 principle. This rule says: "These rules shall be construed to secure the just, speedy, and inexpensive determination of every action." [e.s.] Fla. R. Civ. P. 1.010. The commentary to rule 1.010 explains:
"The direction that the rules `shall be construed to secure the just, speedy, and inexpensive determination of every action' has two courses. It is, first, a direction that if a rule needs interpretation, the stated objective is the guide. The direction recognizes that procedural law is not an end in itself; it is only the means to an end. And that end is the proper administration of the substantive law. Procedural law fulfills its purpose if the substantive law is thereby administered in a `just, speedy, and inexpensive' manner.... It is, next, a direction that each rule shall be applied with that objective in mind, especially where the court may exercise a judicial discretion." [e.s.]
30 FLA. STAT. ANN. 11 (1985). In short, the supreme court's formally settled principle for interpreting the rules is not one of strict construction at all  mechanically striking down every failure to follow procedural rules  but is instead an equitable guide of just application for all the rules ("these rules").
Not long after the adoption of the rules, the court explained why the principle of a "just" construction was applicable even in criminal cases:
"`The modern trend in both criminal and civil proceedings is to excuse technical defects which have no bearing upon the substantial rights of the parties. When procedural irregularities occur, the emphasis is on determining whether anyone was prejudiced by the departure. A defendant is entitled to a fair trial, not a perfect trial.'" [c.o.]
Lackos v. State, 339 So.2d 217, 219 (Fla. 1976). Lackos formulated the following standard for violations of the requirements of procedural rules: "[w]e agree that a showing of prejudice should be a condition precedent to undertaking the kind of procedural niceties envisioned by [prior decisions strictly enforcing a procedural rule]." [e.s.] The court has since repeated the same principle in State v. Anderson, 537 So.2d 1373, 1375 (Fla.1989). Even more recently  in a post-Willis Shaw holding  the court reaffirmed the Lackos principle in State v. Clements, 903 So.2d 919, 921 (Fla.2005). This interpretive principle of excusing technical defects that do not affect the substantive rights of the parties contrasts starkly with the use of both the derogation and penal canons, which the court has used in interpreting attorneys fees statutes to require strict application to "technical defects" and "procedural irregularities".
The supreme court's abrupt change in Willis Shaw, mutely contrary to its own prior precedent settling the same issue differently, was not justified by the court. It is stated in a single sentence without further comment. Hence Willis Shaw has all the earmarks of a stealth obliteration of settled precedent. On the other hand, we were recently taught that the supreme court does not overrule itself without expressly saying so. Puryear v. State, 810 So.2d 901, 905 (Fla.2002). We were instructed that:
"Where a court encounters an express holding from this Court on a specific issue and a subsequent contrary dicta statement on the same specific issue, the court is to apply our express holding in the former decision until such time as this Court recedes from the express holding. Where this Court's decisions create this type of disharmony within the case law, the district courts may utilize their authority to certify a question *1270 of great public importance to grant this Court jurisdiction to settle the law."
810 So.2d at 905-06. It bears remembering that Lackos actually directly considered and fully explained which interpretive principle should be applied to procedural rules, while Willis Shaw simply introduces strict construction of a rule without ever mentioning Lackos.
If one stops with Willis Shaw, it might seem that Lackos has been cast aside. If one continues on to Clements it would seem that Lackos is still controlling. Has the court retreated from the policy employed in Lackos and Clements? If the retreat is only for rules about attorneys fees, is there a coherent justification for different treatment of procedural rules for determining attorneys fees?[6] If rules about fees are to be strictly construed because they are thought penal, why not also rules involving other sanctions in the civil rules? Indeed, why not rules providing for dismissal of claims or defenses?
Even more telling, however, is the central question raised by Willis Shaw: if the Lackos-Clements interpretive principle about just application could be properly applied in criminal cases  where punishment is the very purpose  what is the justification for carving out a contrary principle in civil cases just because attorneys fees are being imposed? One struggles to grasp the thought that the court thinks attorneys fees are more penal than incarceration and criminal fines! I reiterate, Willis Shaw and Lamb are not coherent with the surrounding body of law.
The derogation canon is ill-suited to rules of procedure. The supreme court's power to adopt rules is limited to "practice and procedure in all courts...." Art. V., § 2(a), Fla. Const. The court has itself made clear that court rules can control only procedural matters and cannot alter substantive law. Timmons v. Combs, 608 So.2d 1, 3 (Fla.1992). Therefore, if a particular application of a rule would effect a change in substantive law, the rule is invalid to that extent and cannot be so applied. If the rule has no effect on substantive law no matter how it is applied, there is no reason to insist on a strict interpretation or application. Consequently the derogation canon  created for statutory changes in substantive common law  has no logical purpose or use in the interpretation of mere rules of procedure. See also Blankfeld v. Richmond Health Care Inc., 902 So.2d 296, 305 (Fla. 4th DCA 2005) (Farmer, J., concurring) (re historical origins of substantive canons).
On the other hand, when statutes must be strictly construed, it really means that the statute may not be extended or enlarged by judicial construction or interpretation. See, e.g., Lee v. Walgreen Drug Stores, 151 Fla. 648, 10 So.2d 314, 316 (1942) ("Such statutes must always be construed strictly and are never to be extended by implication."). Omissions or gaps in the statutes should not be filled by judicial construction. In other words, section 768.79 should be read to allow fees only in the circumstances stated clearly in the statute. Judges should not broaden the statute's realm by construction or interpretation. In the end, strict construction should have no greater application than that.
A litigant cannot seek attorneys fees from an adverse party without a statutory or contractual entitlement. See P.A.G. v. A.F., 602 So.2d 1259, 1260 (Fla.1992); Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1147-48 (Fla.1985); Main v. Benjamin Foster Co., 141 Fla. 91, 192 So. 602, 604 (1939); Brite v. Orange *1271 Belt Securities Co., 133 Fla. 266, 182 So. 892 (1938). Hence a party planning to seek such fees will, at some point, have to identify the substantive basis for fees. Under rule 1.442, an offering party is to "identify the applicable Florida law under which [the proposal] is being made." Fla. R. Civ. P. 1.442(c)(1). Identification of the applicable law at that point helps give the offeree a signal  if one is truly needed  that the offeror may use the offer later as a basis for an award of fees under section 768.79.[7]
But the court has not explained how a procedural deficiency in a litigant's offer could have any effect on the underlying substantive entitlement to such fees. Awarding fees in this case in spite of a failure of the offer to identify the statute creating the entitlement to fees does not extend the statute's substantive reach to circumstances beyond the statute's stated basis for awarding fees. Whether or not the statute is mentioned in the offer, the party will still have to show a qualifying offer and a precipitating result. To the contrary, overlooking such harmless procedural defects would simply vindicate both section 768.79's policy of imposing fees when litigation continues after an otherwise qualifying offer, as well as rule 1.010's interpretive command to apply the rules justly and equitably, not strictly. Discretion to forgive harmless rule violations is therefore clearly not inconsistent with the strict construction of attorneys fee statutes. So the truth is that there is no justification for strict construction of rule 1.442.
Actually, the real problem with this rigid interpretation in regard to issues of attorneys fees has nothing to do with hermeneutics anyway. The substantive provisions of section 768.79 as to the entitlement to fees are clear and unambiguous, requiring no interpretation. I think the essential difficulty arises from something unspoken in these opinions, and it is this: the offer of judgment statute is functionally and unfairly one-sided.
The statute is biased in favor of those who are being sued for money damages  who alone can make nominal offers merely to set up a claim for attorneys fees when the litigation is over. There is no comparable offering stratagem whereby claimants can make nominal offers without risk, merely to set up an entitlement under section 768.79 to attorneys fees. In a personal injury case involving disputed liability and significant damages, a lawyer's advice to reject a nominal offer served at the beginning of the lawsuit is not unreasonable.[8] Claimants' lawyers have understandably been arguing for a legal rationale to escape the application of section 768.79's bias and unfairness. I think many judges are discomfited by this unspoken truth.
*1272 Yes, section 768.79 is clear but unavoidable when the qualifying facts appear. Unhappily, the plain text of the offer of judgment statute betrays a legislative purpose to have it mechanically and routinely applied whenever there is an offer followed by a qualifying outcome. See TGI Friday's Inc. v. Dvorak, 663 So.2d 606, 614 (Fla.1995) (Wells, J., dissenting) (section 768.79 eliminated any discretion in entitlement to attorneys fees). And yes, this one-sided disadvantage of the statute is something only the Legislature can correct.
But instead of illuminating the statute's invidious effects by open discussion to urge a legislative correction, the court's reliance on the derogation and penal canons obscures this bias in a fog of pointless talk about strict construction. Strictly construing the statute  beyond refusing to extend its reach  does absolutely nothing to correct its intrinsic unfairness. Ironically, the kind of strict construction usually applied in the cases actually ends up visiting even more unfairness on some claimants who are deprived of fees because of a "technical defect" or "procedural irregularity" in an offer that had no effect on the offeree.[9]See Hauss v. Waxman, 914 So.2d 474, 475-79 (Fla. 4th DCA 2005) (Farmer, J., concurring) (failure to identify section 768.79 in otherwise qualifying offer had no effect on offeree who had preceded such offer with its own offer obviously intended merely to set up right to attorneys fees if outcome favorable to defendant).
The decisional incoherence traces directly from conceiving awards of attorney fees under section 768.79 as penal. The truth is that the Legislature has effectively made offer of judgment attorney fees just another litigation cost. Cf. Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 214 (Fla.1985) ("prejudgment interest is merely another element of pecuniary damages"); see also David L. Kian, The 1996 Amendments to Florida Rule of Civil Procedure 1.442: Reconciling a Decade of Confusion, 71 FLA. BAR J. 32, 33 (Aug.1997) ("when entitlement to fees is a remedy provided by substantive law, the legislature has implemented its sovereign discretion to create a right to fees under the occurrence of certain circumstances. The interest vindicated by the assessment of such fees is not the proper administration of judicial procedures, but rather the public policy goals that motivated the legislature's creation of the entitlement." [f.o.] ). The offeree is paying the cost of exercising the privilege of continuing to litigate after a qualifying offer has been made.[10]
Although the attorneys fees can be onerously high, the imposition of fees under section 768.79 operates no more punitively (except for its inequality) than other consequences experienced routinely and frequently in ordinary litigation.[11] There are *1273 any number of statutes for prevailing party attorneys fees. Costs are awarded against the loser, but they are not penal in their application in civil litigation. Interest itself is a consequence borne by every losing party, but as Argonaut shows it is not imposed as punishment, only a consequence of being liable.
This characterization of attorneys fees as penal is truly mystifying. The imposition of fees under section 768.79 is not based on misconduct by anyone. Fees are not imposed because the party or lawyer has engaged in misbehavior or improper or prohibited conduct. Parties have a right to litigate claims or defenses in these cases. See Art. I, § 21, Fla. Const. (courts shall always be open to redress injury). Guessing wrong in a hard case on liability or how much the jury will award is not misconduct. The conduct leading to an award of fees under this statute is not even malum prohibitum, let alone malum in se. It is not something for which the law is designed to punish a party or lawyer. The imposition of fees under section 768.79 really functions no differently than prevailing party attorneys fees provisions, except that it does not apply to all prevailing parties  only the party making a qualifying offer.
In the sense it is used by the court in characterizing the statute, there is a penal nature inherent in all law. Indeed the central feature of the entire American legal system is its coercive effect. The system functions on legal coercion. The President may say "the Supreme Court has made its decision; now let them enforce it" in a dispute over the Indian tribes, but for all other litigants there is final process, a Sheriff or a Marshal, and a method for carrying out a final judgment or a decree. Every time the court enters a money judgment, an injunction or a decree, every time it imposes costs, fees and interest, it vindicates the judgment with the coercive force of final process.
As a matter of routine coercion of law's decisions, individuals can have their property taken in a levy of execution, they can be held in contempt, they can be made to pay a fine, and they can even be incarcerated. All of this could surely be described as penal in the sense that Willis Shaw uses the term. Properly understood, the imposition of fees under section 768.79 is just one more legal coercion to vindicate a specified outcome fixed by the Legislature's choice of substantive policy in civil litigation. If judges are now to justify limiting or avoiding some outcomes by labeling them penal, then the rationalization is saying both far too much and yet nothing at all. All law is penal in the sense Willis Shaw uses the term.
As for strict or liberal construction, I think it is well past time to lay aside this odd relic from centuries past when the common law was the source of law and social policy. See Blankfeld, 902 So.2d at 303-06 (Farmer, J., concurring) (discussing origins of substantive canons). There is no longer much reason to be suspicious of any legislative change in the common law because there is not much of it left unaffected by statutes. The strict/liberal interpretive canons have become illusory tests in the interpretation of legal writings  whether statutes, rules or contracts. The goal in all such instances should be to interpret these writings correctly, to construe *1274 them as they were meant by their source, author or assenting parties. These strict and liberal canons may seem on the surface to point in one direction or another, but they almost never lend any real insight into how a set of words should be applied in a specific circumstance. Blankfeld, 902 So.2d at 303-06. More frequently, the elastic notions of strict and liberal construction become tendentious, usually ending up as a post-hoc justification for a particular application by judicial fiat rather than a true illumination of how an interpretation was reached.
In this case, the offer did not identify in plain text the statute on which it was based. Sure, that is a technical violation of rule 1.442(c)(1). But so what? This statute is now so pervasively used that such offers are routinely expected. Could anyone reading the offer imagine that it was made under anything but the offer of judgment statute? No one in this case could have been under any misimpression as to the basis for the offer and that fees would be sought if the result warranted it. Inferring the statute from the context and circumstances does not extend section 768.79 beyond the circumstances specified by its drafters. As the statute requires, the award of fees still turns on a qualifying offer, a rejection and a triggering outcome. To paraphrase the court's Lackos justification, litigants in civil cases are entitled to a fair application of the rules, not a perfectly strict one.
In this case, one might argue that the majority opinion is in conflict with Willis Shaw and Lamb. But it should more accurately be said that it is in accord with Lackos and Clements. Based on Puryear, I think we should follow the latter path.
There is no denying, however, that the majority opinion is in express conflict with cases in other districts holding that the mere failure to state the statute is fatal to an award of fees otherwise created by a qualifying offer and rejection. See e.g. McMullen Oil Co., Inc. v. ISS International Service System, Inc., 698 So.2d 372, 373 (Fla. 2d DCA 1997); Murphy v. Tucker, 689 So.2d 1164, 1165 (Fla. 2d DCA 1997); and Pippin v. Latosynski, 622 So.2d 566, 569 (Fla. 1st DCA 1993). To those I would add our own decisions in Grip Development; Jaffrey v. Baggy Bunny, Inc., 733 So.2d 1140, 1141-42 (Fla. 4th DCA 1999); and Cohen v. Arvin, 878 So.2d 403, 405-06 (Fla. 4th DCA 2004), which involved some kindred variation to a failure to identify the statute in the offer.
If the supreme court exercises jurisdiction over this case, I hope it will reconsider its policy of strict construction of procedural rules like rule 1.442 and make clear that strict construction of attorneys fees statutes means only that judges have no power of interpretation to extend such statutes beyond their stated terms and nothing else. I urge the court to exchange the strict and liberal canons for the time-honored tests of text and the standard meanings of language in general use, as well as purpose and context. If these fail, then there are the linguistic canons, the rule of lenity, and other traditional guides to meaning.
NOTES
[1] Hauss v. Waxman, 914 So.2d 474 (Fla. 4th DCA 2005) (Farmer, J., concurring).
[2] The court held that strict construction demands a differentiated joint proposal, even when one defendant's alleged liability is purely vicarious.
[3] In this instance, the term acts refers to statutes.
[4] There was no need to interpret the statute because its plain meaning authorized fees only in actions for wages and Peña had sued for reinstatement.
[5] See also Barnes v. Kellogg Co., 846 So.2d 568, 571 (Fla. 2d DCA 2003) ("It is well established that the offer of judgment statute and the related rule must be strictly construed because they are in derogation of common law.").
[6] See also Fla. R. Civ. P. 1.525 (setting time limit for filing motions for attorneys fees).
[7] It is not uncommon for attorneys fee statutes to contain procedural provisions. See § 768.79(2)(a), Fla. Stat. (2005) (offer must be in writing and state that it is being made under this statute). These procedural aspects are beyond the Legislature's authority, however, and should be considered as surplusage; and the controlling procedures are those established by the supreme court under its rulemaking power in rules 1.442 or 1.525. See Art. V, § 2(a), Fla. Const.; see also Gulliver Academy Inc. v. Bodek, 694 So.2d 675 (Fla. 1997) (in spite of 30-day time limit for filing motion for fees established in section 768.79(6), trial court could grant open-ended extension of time for filing such motion under rule 1.090).
[8] But see Hilyer Sod Inc. v. Willis Shaw Express Inc., 817 So.2d 1050, 1054 (Fla. 1st DCA 2002) ("section 768.79 imposes a penalty for unreasonably rejecting a settlement offer."). It is obvious, however, that under this statute a rejection does not have to be unreasonable. The statute merely requires that it be undone by the final outcome.
[9] As applied in some fee decisions, it seems that the term strict is really being confused with severe and stern. See e.g. McMullen Oil Co. v. ISS Int'l Serv. System, Inc., 698 So.2d 372, 373 (Fla. 2d DCA 1997); Murphy v. Tucker, 689 So.2d 1164, 1165 (Fla. 2d DCA 1997); and Pippin v. Latosynski, 622 So.2d 566, 569 (Fla. 1st DCA 1993), as well as our own decisions in Grip Development; Jaffrey v. Baggy Bunny, Inc., 733 So.2d 1140, 1141-42 (Fla. 4th DCA 1999); and Cohen v. Arvin, 878 So.2d 403, 405-06 (Fla. 4th DCA 2004), all of which involved failures to state the statute or some near variant, rather than a failure to show entitlement under a statute or contract.
[10] Nonetheless, it is important to perceive that this cost can be a significant detriment, one that is capable of chilling access to justice.
[11] Cf. TGI Friday's Inc. v. Dvorak, 663 So.2d 606, 613 (Fla.1995) ("in a given case, the court could justifiably reduce the amount of the attorney's fee to be assessed against a severely injured plaintiff who suffered an adverse verdict after rejecting a small settlement offer. By the same token, the court could reasonably conclude that a defendant with a small liability potential who rejected a large settlement offer should pay only a reduced fee even though the verdict ultimately exceeded the offer by more than twenty-five percent."). Unfortunately, it is not clear to me that trial judges are using their control over the amount of such fees to reduce the bias and unfairness in the statute.